Eddie MAYS, et al., Plaintiffs–Appellants,

v.

CITY OF EAST ST. LOUIS, ILLINOIS, Leland Cherry, and Victor Lee Burries, Defendants–Appellees.

No. 96–3366.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1997.

Decided Aug. 29, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 23, 1997.

Daniel T. Dalton, Stephen M. Ryals (argued), Kessler, Soffer & Ryals, St. Louis, MO, for Plaintiffs–Appellants.

Bruce L. Carmen (argued), D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, Terry I. Bruckert, Hinshaw & Culbertson, Belleville, IL, for Defendants–Appellees.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Victor Lee Burries made an illegal U-turn one night in East St. Louis. Officer Leland Cherry activated his lights and pulled behind the car to make a traffic stop. Burries did not halt. Cherry turned on his siren and spotlight. Burries then took off at high speed, ignored red lights, and swerved across lanes to avoid traffic, with Cherry in pursuit. At a railroad crossing Burries' auto became airborne; on the way down it smashed into a cement barrier. Nine people (six of them children) were passengers in Burries' car. One died; others were severely injured. Many of the injured (though not Burries' mother, who was among the passengers), plus the estate of the passenger who died, sued Cherry and the City under 42 U.S.C. § 1983. These original defendants impleaded Burries, who has defaulted.

The traffic violation gave Cherry probable cause to arrest Burries. *Whren v. United States*, —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An arrest following a traffic stop includes not only the driver but also the passengers; their freedom, too, will be restricted, if only until the officers assure themselves that the scene is safe. *Maryland v. Wilson*, —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). But Burries fled, and the arrest was not completed. *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Plaintiffs do not argue that Cherry lured Burries into a barrier or cul de sac in order to cause a collision, so there was no seizure under the approach of *Brower v. Inyo County*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). See *Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir.1994); *Donovan v. Milwaukee*, 17 F.3d 944 (7th Cir.1994); *Campbell v. White*, 916 F.2d 421 (7th Cir.1990). Similarly plaintiffs do not contend that in giving pursuit Cherry applied deadly force, which may or may not have been justified under the approach of *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct.

1694, 85 L.Ed.2d 1 (1985). (Burries' acts endangered his passengers and other cars on the road, which may have justified force to bring his car to a stop, but we need not confront the question. Cf. *Ford v. Childers,* 855 F.2d 1271 (7th Cir.1988) (en banc).) An automobile on one's tail is some distance from a bullet in the back. The pursued driver has it within his power to avoid injury—indeed, to avoid risk of injury—by slowing to a halt after the officer decides to pursue. *Garner* distinguished a chase from the use of a weapon. So Cherry's actions did not violate the fourth amendment.

■ Plaintiffs' claim rests on the fifth rather than the fourth amendment. They say that Cherry deprived them of liberty (and one of them of life) without due process of law, because a U-turn is too trivial an offense to justify high-speed pursuit. As plaintiffs see it, the Constitution required Cherry to jot down the license plate number and let the driver escape. They do not contend that Cherry had to offer a pre-chase hearing, a ludicrous idea. Cherry was trying to *give* notice—a traffic ticket is legal "process"—that would offer the opportunity for a judicial hearing. Notice in hand is highly desirable; otherwise all the police have is a license plate number, and someone other than the owner may have been driving. The driver, not the car, is the offender, and there is always a risk that the driver is committing other offenses (such as driving while intoxicated or without a license) that endanger both passengers and other motorists; why else take flight? Perhaps Burries wanted to conceal something less serious; the facts suggest that he may have been running an illegal jitney service. Yet a desire to avoid being caught impersonating a taxi driver is a poor explanation for flight to avoid arrest, a crime with a much greater punishment. Darker reasons thus may have been present, but we need not pursue the issue. It is enough to observe that any effort to give notice may be conducted carelessly, but whatever process may be appropriate to deal with tortious conduct by the police is afforded by the opportunity to bring suit in state court. See *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) (en banc).

According to plaintiffs, the due process clause has a substantive component, which in their view requires public officials to refrain from any reckless act that endangers others. Two courts of appeals have held that recklessness (or perhaps "deliberate indifference") in initiating or conducting a high-speed chase indeed violates the due process clause. *Jones v. Sherrill,* 827 F.2d 1102 (6th Cir.1987), modified by *Foy v. Berea,* 58 F.3d 227, 230 (6th Cir.1995); *Lewis v. Sacramento County,* 98 F.3d 434 (9th Cir.1996), cert. granted, — U.S. —, 117 S.Ct. 2406, 138 L.Ed.2d 173 (1997). Others have held that only conduct that "shocks the conscience"—a standard that these courts believe to place a higher burden on plaintiffs—offends standards of substantive due process. *Evans v. Avery,* 100 F.3d 1033 (1st Cir.1996); *Fagan v. Vineland,* 22 F.3d 1296 (3d Cir.1994) (en banc); *Temkin v. Frederick County Commissioners,* 945 F.2d 716 (4th Cir.1991); *Checki v. Webb,* 785 F.2d 534 (5th Cir.1986); *Williams v. Denver,* 99 F.3d 1009 (10th Cir. 1996). At least two courts have held that gross negligence in the conduct of a chase does not violate the due process clause, without implying that proof satisfying a higher standard would establish liability. *Roach v. Fredericktown,* 882 F.2d 294 (8th Cir.1989); *Rooney v. Watson,* 101 F.3d 1378 (11th Cir. 1996). The district court in this case adopted a shocks-the-conscience approach. After concluding that the events did not make his conscience tingle, the judge entered judgment for both Cherry and the City.

■ Conflict among the circuits about the right way to put the rule of decision is attributable in no small measure to the fact that "substantive due process" is an oxymoron. It does not appear in the text of the Constitution but rather is inferred from the assumption underlying this Constitution of limited government (one made explicit in the ninth amendment) that some rights are beyond the power of popular majorities to affect, process or no. See *Washington v. Glucksberg,* — U.S. —, —, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997). Infer-

ring rights from constitutional structure has the sanction of history. Judicial review of legislation's constitutionality is itself an inference from structure (there is no "judicial review clause" in Article III). Likewise with the web of intergovernmental immunities. See *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *Printz v. United States*, ─── U.S. ───, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Yet a court asked to rely on structure rather than text must be diffident, for the legitimacy of judicial review is at its nadir—a point the Supreme Court has made repeatedly about substantive due process. E.g., *Albright v. Oliver*, 510 U.S. 266, 271–72, 114 S.Ct. 807, 810–11, 127 L.Ed.2d 114 (1994) (plurality opinion); *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1446–47, 123 L.Ed.2d 1 (1993); *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Caution in the creation of new rights leads us to conclude that the sort of claim plaintiffs make is not a proper invocation of substantive due process. (Although the parties were content to debate the use of "recklessness" versus "shocks the conscience," we are entitled to decide the antecedent question whether substantive due process supplies the rule of law. See *Kamen v. Kemper Financial Services*, 500 U.S. 90, 99, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991); *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 445–48, 113 S.Ct. 2173, 2177–79, 124 L.Ed.2d 402 (1993).)

Life is the most fundamental of liberties. Nonetheless, as *Glucksberg* observes, even decisions about life or death are subject to regulation. The Court asks not only whether a right is fundamental, but also whether the nation's legal tradition and practices recognize a specific limitation on governmental action with respect to a specific right. ─── U.S. at ───, 117 S.Ct. at 2268. Our nation's legal traditions recognize many vital limitations on the way police apprehend suspects— but these rights are protected by the fourth amendment. Police may make arrests that are authorized by statute and "reasonable" within the meaning of the fourth amendment. A traffic stop on probable cause is reasonable, see *Whren*, and flight to avoid arrest is

a traditional reason to give chase. Flight is a new crime, more serious than the original traffic infraction. As we have already shown, Officer Cherry's conduct did not violate the fourth amendment. Cf. *Ricci v. Arlington Heights*, 116 F.3d 288 (7th Cir.1997) (arrest on probable cause is constitutionally permissible even when the maximum penalty is a fine). *Graham* holds that if the police comply with the fourth amendment, it is inappropriate to conduct a further inquiry under the rubric of "substantive due process." A conclusion that a seizure (or attempted seizure) satisfies the fourth amendment does not foreclose a claim based on another provision of the Constitution. That is the point of *Soldal v. Cook County*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), which held that a lessee may be entitled to a pre-seizure hearing, when eviction and seizure of the person are combined. But once the substantive criteria of the fourth amendment have been applied, there is neither need nor justification for another substantive inquiry—one based not on constitutional text but on an inference from structure. The textual Constitution prevails.

In case after case during recent years, the Court has looked exclusively to the fourth amendment for substantive limits to searches and seizures. Take for example *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), where the police wanted to remove a bullet lodged deep in a suspect's body. Instead of asking, as it might have done in former years, see *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), whether physical invasion would shock the conscience, the Court asked whether the search of the suspect's body would be "reasonable" under the fourth amendment. In *Garner* the Court used fourth amendment principles to develop a framework for the use of deadly force in making arrests; substantive due process went unmentioned. *Graham* followed up by holding that the fourth amendment is the exclusive source of rules for determining the permissible amount of force in making an arrest. See also *Lester v. Chicago*, 830 F.2d 706 (7th Cir.1987). In *Albright* the Court concluded that the fourth amendment supplies the structure for addressing claims of

malicious prosecution: wrongful prosecution isn't a constitutional tort, the Court held, unless it leads to wrongful arrest or custody, using fourth amendment principles to determine when custody is wrongful. The Court said in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), that officials' compliance with the fourth amendment forecloses actions for the deprivation of liberty at the time of an arrest—and it said this despite the preference of a concurring Justice for a "shocks the conscience" approach derived from *Rochin.* 443 U.S. at 147. 99 S.Ct. at 2696 (Blackmun, J., concurring). Recently the Court summed up its view this way: "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, —— U.S. ——, —— n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997).

Although *Graham* involved a claim of excessive force in making an arrest, its logic is equally applicable to claims of excessive zeal in attempting to make an arrest. One cannot distinguish *Graham* by saying that the plaintiff was the offender, and here the plaintiffs are passengers. Plaintiffs do not argue that Officer Cherry was after the passengers rather than the driver, or chased the car because of the passengers; the probable cause supporting the pursuit concerned the driver, and was adequate to justify a stop of the car. A lawful stop of the car is a lawful seizure of all passengers. Nothing but confusion could come from evaluating claims by the driver under the fourth amendment and claims by the passengers under substantive due process.

■ This nation's social and legal traditions do not give passengers a legal right—as opposed to a moral claim—to have police officers protect them by letting criminals escape. Suppose a bank robber takes hostages and demands free passage as the price of the hostages' release. Suppose further that the police do not comply, and that the robber then shoots a hostage. Do the decedent's relatives have a claim against the police? Does substantive due process require the police to comply with the robber's demand,

or may they adopt the policy of never negotiating in order to reduce the incentive for thugs to take hostages in the future? · Which policy is best for the people as a whole is a complex question, answered different ways at different times in this nation (and in dramatically different ways by different nations today)—but it is a question about moral and efficient law enforcement for the people to debate and resolve. It is not a question whose only answer must be given by the judicial branch on the basis of "substantive due process." Common law doctrines reinforce this understanding of our legal culture. A person whose negligence just sets the stage for a criminal act generally is not liable for ensuing injury. For example, a person who negligently leaves a car unattended, with the keys in the ignition, is generally not liable to a person injured by a thief driving the car. See *Prosser & Keeton on The Law of Torts* 201, 313–14 (W. Page Keeton 5th ed.1984). Similarly, it is well understood that people need not take precautions against intentional torts—and "intentional tort" is the mildest description of Burries' behavior.

Political society must consider not only the risks to passengers, pedestrians, and other drivers that high-speed chases engender, but also the fact that if police are forbidden to pursue, then many more suspects will flee— and successful flights not only reduce the number of crimes solved but also create their own risks for passengers and bystanders. That is among the reasons why we held in *Soller v. Moore*, 84 F.3d 964 (7th Cir.1996), that states may set and alter guidelines for the conduct of chases and arrests without fear that they will be held to account under § 1983 for departures from their preferred approaches. In a democracy, the people (through the political branches of government) may resolve hard questions as well as easy ones.

■ *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), offers a different way to see this point—at least when the victims are the passengers in the fleeing car, or pedestrians run over by the criminal, as opposed to persons injured by the police. See also *Archie v. Racine*, 847

F.2d 1211 (7th Cir.1988) (en banc). A public welfare agency failed to protect Joshua De-Shaney from his father. The Court assumed that this failure was culpable under state law, but held that because the injury was inflicted by private hands the due process clause did not provide a remedy. Public officials' decisions played a causal role; no one doubted that had they behaved differently the injury could have been avoided. Still, the Court held, the private role dominated. Joshua's father was a criminal, his crime the immediate source of the injury. The due process clause does not require the state to protect people from criminals. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197, 109 S.Ct. at 1003. So too here. Burries was a reckless driver, his flight from the police an ongoing crime. Plaintiffs' injuries were the result of criminal behavior by a private actor—behavior that Officer Cherry tried in vain to suppress.

One can say that Burries' crime was a response to Cherry's attempt to make an arrest, and that the high speed of the flight was attributable to Cherry's decision to pursue. These facts do not make what Burries did less a crime, or less essential to the harm. Cherry's actions played a causal role, no doubt, but not the *kind* of cause the law recognizes as culpable. Think again about the hostage taker. The robber yells out: "One step closer and I'll shoot the girl and hold you responsible." The police move in; the robber pulls the trigger and becomes a murderer. Do courts enforce the robber's view that the police are "responsible" for this death? Not at all; a criminal's effort to shift the blame—the proposition that it is law enforcement that causes crime—is not one that any legal system can accept. A different line of cases under the fourteenth amendment shows this by distinguishing between what state actors do because of, and things they do in spite of, particular consequences. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Governments may be responsible when they act to bring particular consequences about, but no one believes that Cherry *wanted* the passengers of the car dead or injured. (This restates the point that Cherry did not "seize" the car under the approach of *Brower*.) Cherry may have acted in spite of the risk, but that is equally true of the social workers in *DeShaney*: they left Joshua with his father despite knowing the risk that the father would again beat the boy.

*DeShaney* recognizes that the due process clause requires the state to protect persons in its custody, and the Court held open the possibility that the clause requires the state to offer aid if it cuts off private options, 489 U.S. at 198–203, 109 S.Ct. at 1004–007. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed in his freedom to act on his own behalf." 489 U.S. at 200, 109 S.Ct. at 1005. Cherry did not take any of the passengers into custody (had he been able to do so, the risk Burries posed to them would have ended). And he did not restrict their freedom to protect themselves. They could have told Burries to surrender. Perhaps they did, and perhaps he ignored their pleas, but not because the state weakened their position. Joshua similarly could not stop his father's blows. The Court's point was that the state had not curtailed whatever small ability Joshua had to resist; here, the state did not curtail the passengers' ability to ask the driver to stop, or to overpower him if he continued to endanger their lives.

Death and disability haunt law enforcement. Lax law enforcement emboldens criminals and leads to more crime. Zealous pursuit of suspects jeopardizes bystanders and persons accompanying the offender. Easy solutions rarely work, and *ex post* assessments—based on sympathy for those the criminal has injured, while disregarding the risks to society at large from new restrictions on how the police work—are unlikely to promote aggregate social welfare. Interstices of the Constitution do not contain a solution to the fix the police find themselves in when deciding how vigorously to pursue a criminal. The Constitution's requirements for arrests appear in the fourth amendment. Officer Cherry did not violate the rules that amendment contains. Extra rights come from the

political process or the common law rather than constitutional command. Contemporary society may make for itself the hard choices on which public safety depends.

AFFIRMED

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. In my view, the district court, relying on the well-reasoned opinions of our colleagues in other circuits, properly applied the "shocks the conscience" test that has developed in the Country's due process jurisprudence.