# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-1665

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

PRESSE D. MATHEWS, JR.,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 CR 20028—**Michael P. McCuskey**, *Chief Judge*.

_____

ARGUED APRIL 10, 2006—DECIDED JULY 7, 2006

_____

Before EASTERBROOK, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Presse Mathews, Jr. pleaded guilty to possession of a firearm by a felon, *see* 18 U.S.C. § 922(g)(1). The district court determined that he previously had committed three violent felonies and, as a result, sentenced him under the Armed Career Criminal Act, *see id.* § 924(e)(1). In this appeal, Mr. Mathews contends that one of these prior felonies should not have been classified as "violent" based upon the information available to the court at sentencing. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

On May 5, 2004, a federal grand jury indicted Mr. Mathews on the charge of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). After an unsuccessful motion to suppress the handgun found in his possession, Mr. Mathews pleaded guilty. As his case moved into the sentencing phase, the United States Probation Office prepared a presentence report recommending that Mr. Mathews be sentenced under 18 U.S.C. § 924(e)(1). That provision, known as the Armed Career Criminal Act ("ACCA"), mandates a fifteen-year minimum prison sentence if the defendant has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id*. Mr. Mathews' presentence report recited that he previously had been convicted under Illinois law of (1) robbery; (2) aggravated battery; and (3) unlawful possession of a weapon by a felon.

Mr. Mathews conceded that his robbery and aggravated battery convictions could be counted as two of the three prior offenses necessary for an ACCA sentence, but he objected to the use of his Illinois unlawful possession conviction on the ground that it was not a "violent felony" within the meaning of the ACCA. In order to qualify as "violent" under the statute, the prior felony must have had "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). Alternatively, a felony may qualify as violent under the ACCA if it "involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii).

Mr. Mathews' Illinois unlawful possession conviction was the result of a guilty plea in which he had admitted to violating an Illinois statute that prohibits both simple weapon possession and possession with intent to use, *see* 720 ILCS 5/24-1.1 et seq. To determine which variety of the offense Mr. Mathews had committed, the district court looked beyond the fact of Mr. Mathews' conviction and examined the indictment from the underlying Illinois prosecution. That document charged that Mr. Mathews had "knowingly possessed on his person a dangerous knife with the intent to use that knife unlawfully against Leatrice Jones." Tr. at 189 (internal quotation marks omitted). This reference to the indictment made clear, in the district court's view, that Mr. Mathews' prior conviction satisfied the ACCA's definition of a violent felony. Over Mr. Mathews' objection, the district court then sentenced him to 15 years' imprisonment, the ACCA's mandatory minimum.[1] The court also imposed a five-year term of supervised release, to follow the prison sentence, and a $100 special assessment.

In his appeal to this court, Mr. Mathews seeks our review of the district court's ACCA ruling.[2] In his initial brief, he contended that the district court had relied improperly upon the state court's docket entry that described the facts of the underlying conviction. In its answering brief, the Government initially conceded error; it expressed the view that, although the district court had relied essentially on the

---

[1] Had Mr. Mathews not been classified as an Armed Career Criminal, his sentencing guideline range would have been 51-63 months.

[2] Mr. Mathews also raised initially the denial of his motion to suppress. He later withdrew that issue; accordingly, there is no need to address it in this opinion.

wording of the indictment rather than on the docket entry in making its determination, the court nevertheless had erred by examining, through reference to the indictment, the manner in which Mr. Mathews had committed the offense. After considering the initial positions of both parties, we invited the Attorney General of Illinois to file a brief as *amicus curiae.* The Attorney General accepted our invitation,[3] and, with the permission of the court, both the defendant and the Government have filed supplemental briefs.[4] With the benefit of these submissions, we then heard oral argument and took the case under advisement.

## II

## DISCUSSION

### A.

We begin by setting forth the federal statutory scheme at the heart of this case. Section 922(g) of the criminal code, commonly referred to as the felon-in-possession statute, provides in pertinent part:

> It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year
>
> . . .

---

[3] The court expresses its thanks to the Attorney General for her valuable assistance.

[4] In its supplemental brief, the Government withdrew its earlier concession of error.

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

The federal criminal code also contains a specific penalty provision applicable to this section. First enacted in 1984, this provision is known popularly as the Armed Career Criminal Act, the name under which it was first introduced, *see* Pub. L. 98-473, ch. 18, 98 Stat. 2185 (1984). As applicable to the case before us, the provision reads:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

In turn, Congress has defined certain specific terms in this penalty provision, including the one pertinent to our present inquiry:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be

punishable by imprisonment for such term if committed by an adult, that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

*Id.* § 924(e)(2)(B).

As this court's recent decision in *United States v. Sperberg,* 432 F.3d 706 (7th Cir. 2006), makes clear, the task of determining whether a particular state conviction meets this statutory definition has not been an easy one for the federal courts. In that case, for example, we described the inter-circuit disagreement that has arisen over how to classify prior convictions for felony drunk driving under the ACCA. *See id.* There are of course a significant number of cases in which a straightforward examination of the defendant's prior judgment of conviction, in light of the plain language of the corresponding state statute, makes clear whether his conviction falls within the ambit of a "violent felony" under the federal penalty provision.[5] There are, however, a significant number of instances in which a defendant is convicted under a state statute that encompasses multiple

---

[5] *See, e.g., United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005) (discussing an Indiana robbery statute with elements that invariably qualified it as a violent felony); *United States v. Wallace*, 326 F.3d 881, 887 (7th Cir. 2003) (examining Illinois' unlawful restraint statute that defined the offense with only one set of elements).

categories of offense conduct, some of which would consti-
tute "violent" felonies, and some of which clearly would not
fall within the federal statutory definition.[6] Cases involving
"divisible" criminal statutes such as these have posed
serious and at times intractable problems for practicing
lawyers and judges, and the efforts of the federal courts to
deal with them has required the intervention of the United
States Supreme Court on several occasions.[7]

---

[6] *See, e.g., United States v. Sperberg*, 432 F.3d 706, 708 (7th Cir.
2005) (dealing with a Wisconsin statute that criminalized two
kinds of threat: a threat to injure another and a threat to accuse
another falsely of a crime).

[7] The first case to address this issue was *Taylor v. United States*,
495 U.S. 575 (1990), in which the Supreme Court considered
whether a defendant's prior conviction for burglary under
state law was a qualifying "violent felony." The ACCA specifi-
cally lists "burglary" as a violent crime but does not define it,
*see* 18 U.S.C. § 924(e)(2)(B)(ii), giving rise to the question of
whether Congress intended burglary to have a uniform defini-
tion, or whether burglary was burglary whenever the state had
labeled it as such. The Court opted for a uniform or "generic"
definition, holding that burglary is "any crime, regardless of its
exact definition or label, having the basic elements of unlawful or
unprivileged entry into, or remaining in, a building or structure,
with intent to commit a crime." *Taylor*, 495 U.S. at 599. The Court
thus announced a "categorical approach" to qualifying predicate
felonies under the ACCA. Under this approach, a sentencing
court must look only to the statutory definitions of prior offenses
to determine whether they contain the elements outlined in the
uniform ACCA definitions. *Id.* at 601. The Court then went on to
recognize that, when a single statutory provision defines several
different crimes (such as, to use the Court's example in *Taylor*, a
single statutory provision that declares it a crime to break into
                                                          (continued...)

Decisions of the Supreme Court now have made clear that, when sentencing a defendant under the ACCA, a district court generally must use "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005). These decisions also establish that, for state statutes that are "divisible" in the way we just have described, a sentencing court may examine a limited range of additional material in order to determine which portion of the state statute the defendant violated. *Shepard*, 544 U.S. at 17; *Taylor*, 495 U.S. at 599-600. As the Court held most recently in *Shepard*, this material is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26;[8] *see United States v.*

---

[7] (...continued)
and enter, "any booth or tent, or any boat or vessel, or railroad car"), a court may have to look at the indictment or at the jury instructions to see which of the several different statutory crimes (one involving a tent, a railroad car, or a boat) was at issue. *Id.* at 599 (internal quotation marks omitted). This inquiry is necessary because, under the ACCA's generic definition of burglary, breaking into a tent would be "violent" while breaking into a car would not.

[8] In *Shepard*, the defendant's prior conviction arose from his plea of guilty to violating a Massachusetts burglary statute that criminalized trespassing not only into buildings and structures but also into boats and motor vehicles. *Shepard v. United States*, 544 U.S. 13, 16 (2005). Because that statute included
(continued...)

*Howze*, 343 F.3d 919, 921 (7th Cir. 2003).

**B.**

With the governing federal statutory scheme now before us, we turn to the Illinois statute at issue in this case. The Illinois unlawful possession statute, under which Mr. Mathews was convicted, reads as follows:

> It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm

---

[8] (...continued)

crimes that went beyond what *Taylor* characterized as a generic burglary, the district court declined to classify the defendant's prior conviction as a violent felony under the ACCA. The First Circuit reversed, holding that sentencing courts may look to police reports to determine whether there was "sufficiently reliable evidence that the government and the defendant shared the belief that the defendant was pleading guilty to a generically violent crime." *Id.* at 18 (internal quotation marks omitted). Reversing, the Supreme Court held that a court "determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16. This limitation preserves the categorical approach of *Taylor* and ensures that a defendant was "necessarily" convicted of a generic burglary. *Id.* at 24. It also restricts the trial court from engaging in factfinding about the particulars of a defendant's conduct that are "too much like the findings" deemed impermissible under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. *Id.* at 25.

ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. . . .

720 ILCS 5/24-1.1(a). The code section referenced in this provision contains, along with several exceptions not pertinent to our present inquiry, a lengthy list of items that a convicted felon may not lawfully carry or possess in Illinois. The first subsection provides some examples:

> any bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles, throwing star, or any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or a ballistic knife, which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material or compressed gas; . . . .

*Id.* 5/24-1(a)(1). The next subsection of the statute, 5/24-1(a)(2), criminalizes the possession of several other types of weapons but, unlike the previous subsection, adds an additional element of conviction:

> (a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> . . .
>
> > (2) Carries or possesses *with intent to use the same unlawfully against another*, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character; . . . .

*Id.* 5/24-1(a)(2) (emphasis added).

The Illinois unlawful possession statute thus addresses two situations. Subsection (a)(1) proscribes the possession of weapons, such as guns, bludgeons and black-jacks, that are

designed principally to inflict harm; consequently, a felon may be convicted simply for possessing them. By contrast, the objects covered in subsection (a)(2) can be used commonly for non-violent purposes as well as for violent means. For objects listed in this subsection, the statute therefore requires proof that the felon possessed the object "with the intent to use the same unlawfully against another." *Id.* Without this additional element, a convicted felon could be returned to prison for something as innocent as carving a turkey or chopping wood. *See People v. Crawford*, 495 N.E.2d 1025, 1029 (Ill. App. Ct. 1986).

This reading of the Illinois statutory scheme, which seems evident from the very structure of the statute, has been followed by the Illinois courts. In *Crawford,* the Appellate Court of Illinois, noting explicitly that it was "construing the statutes together and considering all the relevant parts," *id*., arrived at this same interpretation of the statutory scheme. Similarly, in *People v. Gill*, 713 N.E.2d 124, 129 (Ill. App. Ct. 1999), the court construed the same statutory provision as requiring that the state prove that the defendant possessed the weapon (a hatchet) with the intent to use it unlawfully. Furthermore, on at least two occasions, the Supreme Court of Illinois has noted approvingly the holding in *Crawford* that a charge premised on the possession of an item listed in Section 24-1(a)(2) must include an intent to use the item in an unlawful manner. *See People v. Farmer,* 650 N.E.2d 1006, 1011 (Ill. 1995); *People v. Ryan,* 509 N.E.2d 1001, 1002 (Ill. 1987); *see also People v. Sullivan*, 263 N.E.2d 38, 39-40 (Ill. 1970) (holding that "as to a hunting knife proof of intent to use it unlawfully against another is essential").

**C.**

Here, the district court was faced with a record that simply recited Mr. Mathews' Illinois conviction for possessing a weapon as a felon but did not designate, with any particularity, the type of weapon that he had possessed or the subsection that he had violated. In light of the differences, in terms of intent and conduct, between the statutory subsections at issue, a categorical determination whether Mr. Mathews committed a violent felony would be inevitably inconclusive employing only this limited set of information. Under these circumstances, therefore, *Shepard* and *Taylor* allow the sentencing court to "peek at the indictment and equivalent documents to see which component of the state offense the conviction entails." *Abdelqadar v. Gonzales*, 413 F.3d 668, 672 (7th Cir. 2005). Here, the charging document examined by the district court indicated that Mr. Mathews' prior state conviction was for possession of a knife. Because a knife is an object that the Illinois statute does not consider inherently violent, the state indictment further charged the necessary intent-to-use element, stating that Mr. Mathews intended "to use that knife unlawfully against Leatrice Jones." Tr. at 189. This language specifically alleged an element of the offense that was necessary to determine which portion of the Illinois statute Mr. Mathews had violated. The district court therefore did not err in relying on this additional material to determine whether Mr. Mathews' prior conviction was for a "violent felony."

**D.**

Mr. Mathews contends nevertheless that his intent-based violation of the Illinois unlawful possession statute should not be considered categorically violent under the

ACCA.[9] He focuses first on prong one of the ACCA's "violent felony" definition. That aspect of the statute, subsection (e)(2)(B)(i), classifies as violent any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). According to Mr. Mathews, the "intent to use" element of the Illinois statute is fundamentally different from the elements that the ACCA employs to test for violence, namely the "use, attempted use, or threatened use of physical force." *Id.* As he reads the ACCA, its term "use" connotes an actus reus element, while the "intent to use" element found in the Illinois statute signifies only an element of specific intent or mens rea. This argument does find some support in the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 144-49 (1995). There, the Court suggested that the word "use" in a criminal statute necessarily implies something more than inert possession and requires action on the part of the accused. *See id.* (reasoning that the active use of a gun is a crime of violence in a way that mere possession of it, even if criminal, is not).

Fortunately, however, we need not resolve this difficult issue. Subsection (i), the provision just discussed, is only one of the ACCA's two alternative definitions of "violent felony." The other definition classifies as violent any crime that is:

> burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

---

[9] Whether a crime is categorically violent is a question of statutory interpretation that we review de novo. *See United States v. Fife*, 81 F.3d 62, 63 (7th Cir. 1996).

18 U.S.C. § 924(e)(2)(B)(ii). Generally speaking, subsections (i) and (ii) work in tandem, with subsection (ii) supplementing the scope of the "violent felony" definition in two respects. First, subsection (ii) lists four specific categories of property crimes, each of which Congress believed to involve conduct posing a particularly serious "risk of injury to another," even though violence may not be an element of the particular offense. *Id.* Second, through its final "otherwise" provision, the subsection reaches other statutory and common law offenses that, although not listed specifically in subsection (ii), generally involve a similarly serious risk. *Id.*

The subsection's legislative history does not offer any particular examples of offenses that Congress intended the statute to cover in the "otherwise" clause. Our case law, however, provides some helpful illustrations. In *United States v. Franklin*, 302 F.3d 722, 725 (7th Cir. 2002), we held that the crime of escape is a violent felony under the "otherwise" clause of subsection (e)(2)(B)(ii) because escape involves a "serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). We noted that "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so." 302 F.3d at 724 (internal quotation marks and alteration omitted; emphasis in original). Similarly, in *Howze*, we classified fleeing from an officer as a crime of violence. Analyzing the offense under *Taylor*'s categorical approach, we held that, "[b]ecause the [ACCA] calls for an assessment of risk rather than actual outcomes, and the risk that someone will get hurt during recapture (or flight to avoid recapture) does not depend on how the offender got away in the first place, all escapes must be classified as crimes of violence." *Howze*, 343 F.3d at 922.

In the face of this precedent, Mr. Mathews maintains that his unlawful possession offense should not be deemed categorically violent. This is because, according to Mr. Mathews, there are ways to commit the offense in a non-violent manner. As an example, Mr. Mathews asks us to imagine a knife-carrying assailant whose plans to use the knife against someone are thwarted before he reaches the victim to inflict harm. In this situation, Mr. Mathews points out, there is no actual violence. However, in postulating a hypothetically non-violent scenario, Mr. Mathews misunderstands the basic inquiry under subsection (e)(2)(B)(ii)'s "otherwise" clause. By speaking of "serious *potential risk*," 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added), the statute deals in probabilities of injury, not certainties. Thus, as we have observed, the proper benchmark under the "otherwise" clause is "the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario." *United States v. Davis,* 16 F.3d 212, 217 (7th Cir. 1994); *see also Howze*, 343 F.3d at 923-24.

Possessing a weapon as a felon "with intent to use the same unlawfully against another," 720 ILCS 5/24-1(a)(2), involves a very significant probability of physical injury to a victim. Indeed, the structure of the Illinois unlawful possession statute supports this conclusion. By criminalizing the use of certain weapons, like hunting knives and hatchets, only when violent intentions exist, the Illinois legislature has recognized the potential for injury when these objects are used with intent to inflict harm. As a real-world illustration of this danger, one need only review the facts of several Illinois cases dealing with prosecutions under the intent-based section of the unlawful possession statute. *See, e.g., In re W.D.*, 551 N.E.2d 357, 362 (Ill. App. Ct. 1990) (discussing a defendant prosecuted under Section 24-1(a)(2) for bringing a knife with an eight-inch blade to a fistfight); *Gill*, 713

N.E.2d at 129 ("[The] defendant entered the school grounds, waved the hatchet around, struck the cement post several times and stated, 'I'm going to kill, kill all of you if I have to.' "); *People v. Vaughn*, 483 N.E.2d 417, 418-19 (Ill. App. Ct. 1985) (discussing a defendant prosecuted under Section 24-1(a)(2) for approaching a police officer and shouting profanity-laden threats while carrying a thirteen-inch butcher knife). Given the risk of injury inherent in the situations addressed by Illinois' unlawful possession statute, we hold that its "intent to use" offense, 720 ILCS 5/24-1(a)(2), is categorically a "violent felony" for purposes of 18 U.S.C. § 924(e).

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*