In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1439

ROYCE BROWN,

*Petitioner-Appellant,*

*v.*

JOHN F. CARAWAY, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:12-cv-00028-WTL-WGH—**William T. Lawrence**, *Judge.*

ARGUED JANUARY 18, 2013—DECIDED MAY 10, 2013

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. In 1996, a jury in the district court for the District of Delaware convicted Royce Brown of one count of possession with intent to distribute cocaine base and one count of possession of a firearm by a felon. At sentencing, the district court classified Brown as a "career offender" under U.S.S.G. § 4B1.1. Brown filed a timely 28 U.S.C. § 2255 motion arguing that "counsel was ineffective for failure to object to his sentencing as a career offender which

resulted in his sentence being a minimum of 360 months instead of between 262 and 327 months." The district court rejected this argument, and the Third Circuit denied a certificate of appealability.

Now incarcerated in Indiana, Brown filed a *pro se* habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana, contending that under *Begay v. United States*, 553 U.S. 137 (2008), his prior Delaware conviction for Arson in the Third Degree did not qualify as a crime of violence under U.S.S.G. § 4B1.1. The district court dismissed his habeas petition *sua sponte*, reasoning that "the savings clause embodied in 2255(e) requires a claim of actual innocence directed to the underlying conviction, not merely the sentence." Brown now appeals, aided by appointed counsel.

As an initial matter, the district court erred in concluding that challenges to a sentence (rather than the underlying conviction) are categorically barred under 28 U.S.C. § 2241. On the merits, Brown is entitled to relief under § 2241. Under *Begay*, Brown's prior conviction for Arson in the Third Degree under Delaware law does not qualify as "generic" arson under the enumerated crimes clause of the career offender Guideline, nor is it covered by the residual clause. We therefore reverse the decision of the district court and hold that Brown is entitled to relief under § 2241.

## I. Background

In 1995, officers conducting a probation search of Brown's residence discovered 345 grams of crack cocaine,

$45,000 in currency, and a loaded .380 semiautomatic handgun. On June 27, 1996, a jury in the district court for the District of Delaware convicted Brown of one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(a), and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(a)(1).

The presentence investigation report recommended sentencing Brown as a career offender under U.S.S.G. § 4B1.1, characterizing his two prior felony convictions— one for second-degree assault in violation of 11 Del. C. § 612(a)(3); the other for Arson in the Third Degree in violation of 11 Del. C. § 801—as "crimes of violence." Brown's designation as a career offender resulted in an offense level of 37 and a Guidelines range of 360 months to life. Absent the career offender enhancement, Brown faced an offense level of 34, which when combined with Brown's criminal history category of VI, would have resulted in a Guidelines range of 262 to 327 months. The court rejected Brown's argument that his assault conviction was not a crime of violence and adopted the probation officer's recommendation. The court imposed a 360-month sentence on the drug charge and a 120-month sentence on the gun charge to run concurrently, with five years of supervised release. The district court imposed this sentence prior to *United States v. Booker*, 543 U.S. 220 (2005) and therefore viewed the application of the Guidelines range as mandatory. The Third Circuit affirmed.

In 2000, Brown filed a timely motion under 28 U.S.C. § 2255 to vacate his sentence. He argued that his counsel

was ineffective for failing to object to his sentencing as a career offender, which resulted in a substantially higher Guidelines range. The district court rejected this argument, holding that the "record clearly supports a finding of petitioner's status as a career offender," and accordingly denied his motion as well as a certificate of appealability. The Third Circuit also denied a certificate of appealability.

Brown is currently incarcerated in the federal penitentiary in Terre Haute, Indiana. On February 7, 2012, he filed a *pro se* habeas petition under 28 U.S.C. § 2241 in the District Court for the Southern District of Indiana. He argued that under *Begay v. United States*, 553 U.S. 137 (2008), his prior Delaware conviction for Arson in the Third Degree did not qualify as a "crime of violence" under U.S.S.G § 4B1.1. He claimed that therefore he was "actually innocent of being a career offender" and accordingly that the sentencing court should have used a Guidelines range of 262 to 327 months, rather than 360 months to life.

Two weeks after Brown filed this petition, and before he served the Government, the district court dismissed the habeas petition *sua sponte*. The court reasoned that "the savings clause embodied in 2255(e) requires a claim of actual innocence directed to the underlying conviction, not merely the sentence." It noted that Brown did not contend that he was actually innocent of his underlying crimes, rather, he contended only that the career offender designation should not have been applied to him. The court therefore dismissed the petition without soliciting any response from the Government.

Brown filed a timely notice of appeal. Because Brown never served the Government with the petition, the Government filed a motion for an order of non-involvement with the appeal, which we granted. However, on November 19, 2012, we vacated the non-involvement order and requested that the respondent file a brief on or before December 28, 2102. The Government complied.

## II. Discussion

We review the denial of a § 2241 petition de novo. *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012). Federal prisoners who seek to bring collateral attacks on their conviction or sentences must ordinarily bring an action under 28 U.S.C. § 2255, "the federal prisoner's substitute for habeas corpus." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). However, a federal prisoner may petition under § 2241 "if his section 2255 remedy 'is inadequate or ineffective to test the legality of his detention.'" *Id.* (citing § 2255(e), the "Savings Clause"). *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), established three conditions for this exception to apply. *Id.* at 610-12. First, the prisoner must show that he relies on a "statutory-interpretation case," rather than a "constitutional case." *Rios*, 696 F.3d at 640. Second, the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion. *Id.* "The third condition is that [the] sentence enhancement . . . have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceed-

ing." *Id.*; *see also Davenport*, 147 F.3d at 611 (a prisoner must show "a fundamental defect in his conviction or sentence").

In a recent collateral challenge also based on *Begay*, we found that the first two conditions were clearly satisfied. *Rios*, 696 F.3d at 640. We recognized that "*Begay* was not a constitutional case, but a statutory-interpretation case," thus satisfying *Davenport*'s first consideration, and that there, the prisoner "could not have invoked [*Begay*] in his first section 2255 motion either, because *Begay* hadn't yet been decided." *Id.* Likewise here, Brown brings a challenge based on *Begay* (the same statutory interpretation case), which had not been decided as of Brown's first § 2255 motion. The Government does not contest the fact that *Begay* was a statutory interpretation case, though it does dispute the notion that Brown could not have raised his current argument in his first section 2255 motion. We conclude that Brown could not have raised his current argument in his first section 2255 motion because it was foreclosed by binding precedent at that time; this argument will be addressed in greater detail in Section B, *infra*, in light of our more recent reasoning in *Werlinger*. 695 F.3d at 648.

The Government concedes that the third *Davenport* consideration is satisfied here, and we think rightfully so. The Government reasons that our decision in *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), requires finding that the erroneous application of the mandatory career offender Guideline is a fundamental sentencing defect that can be remedied under § 2241. *Narvaez* concluded that a misapplication of the mandatory career

offender Guideline presented a cognizable non-constitu-
tional claim for initial collateral relief because the error
resulted in a miscarriage of justice. *Id.* at 627-28. Although
*Narvaez* was a § 2255 case, the Government concedes
that its holding forecloses a credible argument that an
identical error is not a "fundamental sentencing defect"
justifying successive § 2241 relief under *Davenport*.[1]

---

[1] In reaching the contrary conclusion that a prisoner may
never bring a collateral challenge to a sentence under § 2241,
the district court misinterpreted our decision in *Unthank v.
Jett*, 549 F.3d 534 (7th Cir. 2008). In that case, the prisoner
brought a § 2241 action challenging his sentence, but he did not
allege that a retroactively applicable Supreme Court decision
(like *Begay*) entitled him to relief. *Id.* at 534-35. He instead
contended that he was "entitled to a reduced punishment
because, after sentence was imposed in his federal case, one
of his state convictions was vacated," and that "[r]ecalculating
his criminal history in light of the state court's decision
would (or at least could) have led to a lower federal pen-
alty." *Id.* We concluded that the prisoner could not seek
savings clause relief because he failed to prove that § 2255
was "inadequate or ineffective." *Id.* at 536. Unthank was not
entitled to relief under § 2241 because he did not contend that
"a glitch in § 2255 prevent[ed] application to his situation of
a retroactive decision of the Supreme Court." *Id.* In the present
case, by contrast, Brown alleges precisely that: he argues
that he is entitled to relief under a retroactively applicable
Supreme Court decision (*Begay*), and that "Congress may have
overlooked the possibility that new and retroactive statutory
decisions could support collateral review." *Taylor v. Gilkey*,
314 F.3d 832, 835 (7th Cir. 2002). Brown's claim therefore

(continued...)

The Government is correct. In *Narvaez*, we concluded that *Begay*'s postconviction clarification in the law demonstrated that a § 2255 petitioner had been improperly designated as a career offender. As a result, "his period of incarceration exceed[ed] that permitted by law and constitute[d] a miscarriage of justice." *Id.* at 623. We reasoned that "[t]he career offender status illegally increased [the defendant's] sentence approximately five years beyond that authorized by the sentencing scheme," which went to the "fundamental legality of his sentence and assert[ed] an error that constitute[d] a miscarriage of justice." *Id.* at 629. Although *Narvaez* arose in a distinct procedural context (there, the § 2255 motion was petitioner's first), its reasoning regarding the nature of the error applies here: To classify an individual as belonging to a "subgroup of defendants, repeat violent offenders" is to "increase, dramatically, the point of departure of his sentence" and accordingly is "certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief." *Id.* Thus, the misapplication of the sentencing guidelines, at least where (as here) the defendant was sentenced in the pre-

---

[1] (...continued)

falls into the "special and very narrow exception" to the general rule, emphasized in *Unthank*, that sentencing errors are generally not cognizable on collateral review: he alleges that a "postconviction clarification in the law has rendered the sentencing court's decision unlawful." *Narvaez*, 674 F.3d at 627.

*Booker* era, represents a fundamental defect that constitutes a miscarriage of justice corrigible in a § 2241 proceeding.

In reaching this conclusion, we depart from the views of some of our sister circuits. For example, in *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc), a case also involving a collateral *Begay* claim, the Eleventh Circuit addressed the question of whether "the savings clause of § 2255(e) appl[ies] to claims that the sentencing guidelines were misapplied in the pre-*Booker* mandatory guidelines era in a way that resulted in a substantially longer sentence that does not exceed the statutory maximum." *Id.* at 1306. The court determined that savings clause relief is unavailable in those circumstances, noting that the clause's text "does not indicate that it authorizes the filing of a § 2241 petition to remedy a miscalculation of the sentencing guidelines that already has been, or may no longer be, raised in a § 2255 motion," *id.* at 1307, and citing the "finality-busting effects of permitting prisoners to use the savings clause as a means of evading the second or successive motions bar," *id.* at 1309. These policy interests prompted the Eleventh Circuit to "decline Gilbert's invitation to undermine the finality of judgment principles by using § 2255(e) to knock down the second or successive motions bar that Congress constructed in § 2255(h)" and conclude that sentencing claims cannot be brought under § 2241 via § 2255(e). *Id.* at 1313. The Fifth Circuit has similarly disallowed federal prisoners from pursuing relief under the savings clause when they challenge only their status as career offenders, reasoning that the

savings clause is available only to prisoners asserting actual innocence (i.e., that they were convicted of a nonexistent crime). *See In re Bradford*, 660 F.3d 226, 230 (5th Cir. 2011).

We respectfully disagree with this interpretation of the savings clause. The text of the clause focuses on the legality of the prisoner's detention, *see* § 2255(e) (applicable where § 2255 remedy is "inadequate or ineffective to test the legality of his *detention*") (emphasis added); it does not limit its scope to testing the legality of the underlying criminal conviction. As indicated in our discussion of *Narvaez*, sentences imposed pursuant to erroneous interpretations of the mandatory guidelines bear upon the legality of the petitioner's detention for purposes of the savings clause. *See* 674 F.3d at 629. For a prisoner serving a sentence imposed when the guidelines were mandatory, a § 2241 habeas petition raising a guidelines error "tests the legality of his detention" within the meaning of the savings clause, § 2255(e), because the guidelines had the force and effect of law; the only lawful sentence was a guidelines sentence. Accordingly, provided that the other *Davenport* conditions are present, we conclude that a petitioner may utilize the savings clause to challenge the misapplication of the career offender Guideline, at least where, as here, the defendant was sentenced in the pre-*Booker* era.[2]

---

[2]  Because our conclusion creates a conflict among the circuits, we circulated the opinion before release to all judges in

(continued...)

We thus turn our attention to the merits. Although the district court never adjudicated Brown's § 2241 claim on the merits, the Government contends that the district court's judgment should be affirmed on alternate grounds: specifically, that Arson in the Third Degree under Delaware law is a "crime of violence" for purposes of the career offender enhancement. *See In re UAL Corp.*, 468 F.3d 444, 449 (7th Cir. 2006) ("A winner may defend its judgment on any ground preserved in the district court.").

A defendant is a career offender if: (1) the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for a crime of violence or controlled substance offense. U.S.S.G. § 4B1.1(a). The career offender Guideline defines "crime[s] of violence" in the following way:

> a. The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>    (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
>    (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or [b] otherwise

---

[2] (...continued)
active service pursuant to 7th Cir. R. 40(e). No judge requested a rehearing en banc.

involves conduct that presents a serious po-
tential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). We must therefore determine whether
Brown's prior conviction for "recklessly damag[ing] a
building by intentionally starting a fire or causing an
explosion," 11 Del. C. § 801(a), qualifies as a crime of
violence under the terms of the career offender Guideline.

## A. Arson in the Third Degree is Not a "Crime of Violence"

Under the plain language of the Guideline, Arson in
the Third Degree is a crime of violence if it satisfies
Clause 1 (the "elements clause"), Clause 2(a) (the "enu-
merated crimes clause") or Clause 2(b) (the "residual
clause").

### (i) Arson in the Third Degree Does Not Satisfy the "Elements Clause"

The Government concedes that Delaware's third-
degree arson statute does not satisfy the elements
clause. Nothing on the face of the statute involves "the
use, attempted use, or threatened use of physical force
against the person of another." § 4B1.2(a); *see United
States v. Sonnenberg*, 628 F.3d 361, 365 (7th Cir. 2010)
(elements clause focuses on "the statute on its face").

### (ii) Arson in the Third Degree Does Not Satisfy the "Enumerated Crimes Clause"

The enumerated crimes in Clause 2(a) includes the crime of "arson." U.S.S.G. § 4B1.2(a)(2). Under *Taylor v. United States*, 495 U.S. 575 (1990), however, the fact that Delaware labels the relevant predicate offense as "Arson [in the Third Degree]" is not dispositive as to whether that crime constitutes arson within the meaning of § 4B1.2(a)(2). *See United States v. Mathews*, 453 F.3d 830, 833 n.7 (7th Cir. 2006) (observing that in *Taylor*, "[t]he Court opted for a uniform or 'generic' definition" of burglary and rejected the view that "burglary was burglary [for purposes of the ACCA] whenever the state had labeled it as such"). *Taylor* instructs that to determine whether Delaware's third-degree arson is contemplated by the enumerated crime of "arson" in the Guideline, we must compare Arson in the Third Degree under Delaware law with the "modern generic view" of the common law crime of arson. *Id.* at 589. If Arson in the Third Degree is broader than generic arson—meaning that it criminalizes conduct that generic arson does not—then it does not qualify as arson within the meaning of the career offender Guideline. *See Mathews*, 453 F.3d at 833 n.7; *Taylor*, 495 U.S. at 589-90 (concluding that, with regard to burglary as a predicate offense, Congress "had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes," "regardless of technical definitions and labels under state law").

In *Begay*, the Supreme Court noted that arson means "causing a fire or explosion with '*the purpose of*,' e.g.,

'destroying a building . . . of another' or 'damaging any property . . . to collect insurance.'" 553 U.S. at 145 (quoting Model Penal Code § 220.1(1) (1985)) (emphasis added, ellipses in original).[3] Consistent with that definition, several circuits have understood generic arson as requiring a *mens rea* of willfulness or maliciousness. *See United States v. Velez-Alderete*, 569 F.3d 541, 544 (5th Cir. 2009); *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009); *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1230 (9th Cir. 2005). The Supreme Court has described the *mens rea* of willfulness or maliciousness as requiring a purpose to inflict injury. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 494 (2008).

Accordingly, because the Delaware law punishes one who "*recklessly* damages a building by intentionally

---

[3] *Begay*'s definition of generic arson derives directly from Model Penal Code § 220.1(1). Arson in the Third Degree under Delaware law, by contrast, corresponds to a separate Model Penal Code provision: § 220.1(2), "reckless burning or exploding," which punishes one who "purposely starts a fire or causes an explosion . . . and thereby recklessly . . . places a building or occupied structure of another in danger of damage or destruction." This fact bolsters our conclusion that Arson in the Third Degree is distinct from "generic" arson as defined in *Begay*. Further, our analysis will not provide a loophole for all Delaware arsonists to avoid application of the career offender Guideline: Delaware has a provision that squarely fits the "generic" definition of arson as defined in *Begay*: Arson in the Second Degree, which punishes one who "intentionally damages a building by starting a fire or causing an explosion," clearly qualifies. 11 Del. C. § 802(a).

starting a fire or causing an explosion," 1 Del. C. § 801(a) (emphasis added), a defendant need not have had "the purpose of" destroying property, as specifically required in *Begay* to constitute the generic crime of arson. 553 U.S. at 145. For example, Delaware's law is broad enough to cover a defendant who lawfully lights a cigarette or sets a bonfire on his own property and is merely reckless as to whether the fire might spread and damage an adjoining building. The generic crime of arson as defined in *Begay*, by contrast, is not so broad.

The Government disagrees with this characterization of generic arson. It argues that *Begay* did not purport to be defining the elements of the contemporary crime of arson, as *Begay* was "not even an arson case." It accordingly argues that Brown's reliance on a "passing parenthetical statement" in *Begay* defining generic arson as requiring an element of purposefulness is misplaced.

However, a closer reading of *Begay* reveals that the Court's statement characterizing generic arson as embracing a purposefulness element has more significant force. In *Begay*, the Court considered whether driving under the influence ("DUI") qualified as a "violent felony" under the residual clause of the Armed Career Criminal Act ("ACCA")[4] and determined that the ACCA's "listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope." 553

---

[4] The ACCA's residual clause is identical to that of the career offender Guideline.

U.S. at 142. The Court proceeded to analyze the elements of "burglary," "arson," and "extortion," and concluded that each involved "purposeful, violent, and aggressive conduct." *Id.* at 144-45 (quotation marks omitted). Based on its review of these enumerated offenses, the Court concluded that the residual clause, too, applied to crimes involving "purposeful, violent, and aggressive conduct." *Id.* We view the Court's analysis as therefore supporting our conclusion that generic arson contemplates purposeful, rather than reckless, conduct.

Further, the Government has not cited any precedent contradicting the Supreme Court's statement indicating that the enumerated offenses require an element of purposefulness, or any precedent supporting its alternate suggestion that mere recklessness is the requisite *mens rea* for generic arson. At most, it suggests that there is a divergence of authority on the question. But the "categorical" approach embraced by the Supreme Court in *Taylor* requires that we adopt a single, nationwide definition of generic arson and then evaluate whether a particular state statute substantially corresponds to that definition. *See* 495 U.S. at 592 ("We think that 'burglary' in §924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes.").

The Government argues that "[e]ven if the lack of consensus regarding the precise mental state required for contemporary arson was not fatal to Brown's claim, the fact that he was convicted under a statute proscribing intentional conduct likely means that he was

convicted of generic arson." However, the Supreme Court rejected this line of argument in *Begay* with respect to the crime of driving under the influence. There, the Government argued that "the knowing nature of the conduct that produces intoxication combined with the inherent recklessness of the ensuing conduct more than suffices to create an element of intent" for purposes of ACCA's residual clause. *Id.* at 145 (quotation marks omitted). The Court disagreed. It recognized that "a drunk driver may very well drink on purpose," *id.*, but nevertheless concluded that drunk driving was not analogous to "violent and aggressive crimes committed intentionally such as [generic] arson" and the other enumerated offenses. *Id.* at 148. Likewise here, a defendant may very well light a cigarette "on purpose," but the relevant *mens rea* inquiry surrounds the consequences of that act—here, *recklessly* damaging a building. 11 Del. C. § 801(a) (emphasis added). The fact that Arson in the Third Degree under Delaware law includes a single element of intent, therefore, cannot be understood to require a finding that third-degree arson substantially corresponds to the generic crime of arson. We conclude that Arson in the Third Degree under Delaware Law is not generic arson for the purposes of the career offender Guideline and thus is not covered by the enumerated offenses clause.

### (iii)   Arson in the Third Degree Does Not Satisfy the "Residual Clause"

We must next consider whether Arson in the Third Degree is covered by the residual clause of the career

offender enhancement, which applies to any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). In *Begay*, the Supreme Court held that the ACCA's identical residual clause applies only to crimes that involve "purposeful, violent, and aggressive conduct." 553 U.S. at 144-45 (quotation marks omitted). Because Delaware's third-degree arson statute criminalizes the act of *"recklessly* damaging a building," 11 Del. C. § 801(a) (emphasis added), Brown argues that it does not contemplate the sort of purposeful conduct contemplated by the residual clause under *Begay*. We agree.

The Government rejects Brown's reading of the Delaware statute, again emphasizing that the statute criminalizes some intentional conduct. *See id.* (third-degree arson punishes one who "recklessly damag[ing] a building by *intentionally* starting a fire or causing an explosion") (emphasis added). It argues that statutes proscribing *any* intentional conduct satisfy the residual clause under *Begay*, and cases involving "pure" recklessness are distinguishable from the present one.

However, the Delaware statute carries an equivalent *mens rea* burden to the DUI crime at issue in *Begay*, which did not qualify as sufficiently "purposeful" so as to fall within the scope of the residual clause. We've explained that "[i]n *Begay*, . . . the Court rejected a reading of the ACCA that would have allowed the drunk driver's *intentional* acts of drinking and driving, followed by *recklessness* with regard to the behavior that the statute made criminal (behavior that represented

the consequences of the intentional act of drinking), to satisfy the statute." *United States v. Woods,* 576 F.3d 400, 409 (7th Cir. 2009) (emphasis added). Applying the Court's logic here, the act of intentionally setting a fire, followed by recklessness with respect to the possibility that the fire will cause damage ("the consequences of the intentional act") likewise cannot constitute a crime of violence under the residual clause. The Government's argument that a statute contemplates "purposeful" conduct under *Begay* so long as the statute includes a *mens rea* of intent with regard to *any* act, even if it includes a *mens rea* of recklessness with regard to the consequences of that act, is unconvincing: We've explained that "[e]very crime of recklessness necessarily requires a purposeful, volitional act that sets in motion the later outcome." *Id.* at 411.

This conclusion is bolstered by our decision in *United States v. Woods*, a case interpreting the career offender Guideline. In *Woods*, we construed *Begay* to mean that "the residual clause encompasses only purposeful crimes; crimes with the *mens rea* of recklessness do not fall within its scope." 576 F.3d at 412-13. We accordingly concluded in *Woods* that involuntary manslaughter was not a "crime of violence" under *Begay* because the *mens rea* required for the offense was recklessness rather than intent. *Id.* at 410-13. By the same logic, because Arson in the Third Degree under Delaware law criminalizes "*recklessly* damag[ing] a building by intentionally starting a fire or causing an explosion," 11 Del. C. § 801(a) (emphasis added), third-degree arson cannot serve as a career offender predicate.

The Government argues, however, that the continuing validity of *Woods* is questionable after *Sykes v. United States*, 131 S. Ct. 2267 (2011). In *Sykes*, the Supreme Court determined that Indiana's crime of vehicular flight is a "violent felony" under the ACCA's residual clause. *Id.* at 2277. The Court explained that the residual clause's requirement that an offense "present[ ] a serious potential risk of physical injury to another" calls for an inquiry into risk, explaining that "[i]n general, levels of risk divide crimes that qualify from those that do not." *Id.* at 2275. Because "[s]erious and substantial risks are an inherent part of vehicle flight," *id.* at 2276, the Supreme Court determined that the Indiana crime is covered by the residual clause.

Based on this analysis, the Government urges us to reject the inquiry into *mens rea* emphasized in *Begay* and *Woods* and instead embrace an assessment of risk to determine whether third-degree arson satisfies the residual clause. Because the arson offense at issue here involves serious potential risk of injury to others in the ordinary case, the Government continues, Delaware's Arson in the Third Degree should qualify under the residual clause.

But *Sykes* can be reconciled with *Begay* and *Woods*. The Indiana law addressed in *Sykes* "makes it a criminal offense whenever the driver of a vehicle *knowingly or intentionally* 'flees from a law enforcement officer,'" *id.* at 2270 (quoting Ind. Code § 35-44-3-3 (2004) (emphasis added)); the statute thus contemplates only purposeful conduct. This fact was critical to the Court's endorse-

ment of a risk inquiry for purposes of determining whether the crime satisfied the residual clause. *See id.* at 2275. *Sykes* drew an explicit distinction between statutes which criminalize "purposeful or deliberate conduct" (such as vehicular flight) and statutes with less stringent *mens rea* requirements, including recklessness, negligence, and strict liability crimes (analogous to driving under the influence, at issue in *Begay*). *Id.* at 2275. For cases involving crimes with stringent *mens rea* requirements, the Court indicated that an assessment of risk levels provides a "manageable standard" for determining the residual clause's applicability; for cases involving a "crime akin to strict liability, negligence and recklessness crimes," *Begay*'s "purposeful, violent, and aggressive formulation" can help to "explain the result." *Id.* at 2276.

Accordingly, we interpret *Sykes* as having recognized that the purposefulness inquiry embraced in *Begay* remains applicable to statutes with less stringent *mens rea* requirements, including those with a *mens rea* of recklessness.[5] For the reasons already articulated,

---

[5] Indeed, even if *Sykes* did require an evaluation of risk in the present case (in lieu of the "purposeful, violent, and aggressive" formulation), Delaware's Arson in the Third Degree *still* would not qualify as a predicate offense under the residual clause. *Sykes* explained that "a crime involves the requisite risk [to fall under the residual clause] when the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses." 131 S. Ct. at 2273 (quotation marks omitted). The closest analog

(continued...)

Delaware's Arson in the Third Degree qualifies as such a statute. Delaware's Arson in the Third Degree law is not covered by the career offender Guideline's residual clause. *See Woods*, 576 F.3d at 412-13 ("[T]he residual clause encompasses only purposeful crimes; crimes with the *mens rea* of recklessness do not fall within its scope.").

Brown has thus demonstrated that Delaware's Arson in the Third Degree does not satisfy the elements clause, the enumerated offenses clause, or the residual clause, meaning that it does not qualify as a crime of violence for the purposes of the career offender Guideline. Nevertheless, in its brief, the Government claims that "Brown's burden required him to do more than merely show that his arson conviction was not a crime of violence; rather, he must clearly make this showing." (Appellee's Br. at

---

[5] (...continued)

to Brown's conviction among the enumerated offenses is generic arson. But of course, Delaware's Arson in the Third Degree, requiring a *mens rea* of recklessness, is less risky than generic arson, which requires the commission of an act *intending* or *knowing* that it will cause damage. *See Begay*, 553 U.S. at 145; *Cf. James v. United States*, 550 U.S. 192, 203-04 (2007) (finding that the closest analog to "attempted burglary" was the enumerated offense of "generic" burglary, and that "attempted burglary" was a crime of violence under the residual clause because "the risk posed by an attempted burglary that can serve as the basis for an ACCA enhancement may be even greater than that posed by a typical completed burglary.").

30). It further suggests that Brown "bears the burden of showing that the essential prerequisites for the extraordinary relief he seeks have all been clearly recognized by prior case law." (Appellee's Br. at 32-33). The Government apparently gleans this claim from the federal government's general "interest in the finality of its criminal judgments," *United States v. Frady*, 456 U.S. 152, 166 (1982), as well as the restrictive approach to successive collateral relief embraced by Congress in the text of the Antiterrorism and Effective Death Penalty Act of 1996. This argument has no textual basis in § 2241 or § 2255 (neither provision contains reference to a requirement that a prisoner's entitlement to relief be "clearly recognized"), and the Government does not explain how it is grounded in the test we articulated in *Davenport* for obtaining habeas relief under § 2241.

At oral argument and subsequently in a letter to the court, the Government modified its position, explaining that Brown must show that "(a) the legal basis for his claim is clear (b) as a result of an intervening precedent." From the Government's point of view, "the narrow dispute between the parties is simply whether *Begay* affects the status of Mr. Brown's prior conviction with the requisite degree of clarity necessary to justify successive collateral relief."

We may dispense with the purported narrow dispute between the parties by finding that *Begay* provided a "postconviction clarification in the law" that has "rendered the sentencing court's decision unlawful." *Narvaez*, 674 F.3d at 627. It is sufficient, for present purposes, that "it is now clear that [Brown] . . . never should

have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive and violent offenders." *Id.* To the extent that the Government's shifting argument is grounded in the notion that habeas relief should be difficult to obtain, we do not quarrel with this proposition: "sentencing errors are generally not cognizable on collateral review." *Id*. But the stringent requirements articulated in *Narvaez* and our other cases are subject to a "special and very narrow exception" where a "postconviction clarification in the law has rendered the sentencing court's decision unlawful." *Id.* Today we encounter one such rare case.

### B. Prior to the Supreme Court's Ruling in *Begay*, Brown's Argument was Foreclosed by Binding Precedent

The Government argues that even if Brown was mistakenly sentenced as a career offender, he is not entitled to pursue his claim because he has not established that section 2255 was inadequate or ineffective to test the legality of his detention. (Appellee's Br. at 43). Specifically, the Government asserts that Brown could have raised his claim earlier. As previously mentioned, in *Rios* we determined that the prisoner had met the second *Davenport* condition (requiring the prisoner to show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion) because his challenge was based on *Begay* (a retroactive Supreme Court decision), and his § 2255 petition was

denied prior to *Begay*. 696 F.3d at 640. Likewise here, Brown's § 2241 petition is based on *Begay* and the Delaware District Court denied his § 2255 motion prior to *Begay*.

In *Werlinger*, however, we employed a slightly higher standard for proving that § 2255 was inadequate or ineffective: We required the prisoner to show that his claim was "foreclosed by binding precedent" at the time of his direct appeal and § 2255 motion. *Werlinger*, 695 F.3d at 648. Brown argues that he can meet this heightened standard and is therefore eligible for § 2241 relief.

To this end, Brown argues that binding Third Circuit precedent prior to *Begay* foreclosed any contention that his conviction for Arson in the Third degree was not a "crime of violence" under the career offender Guideline. Brown points us to *United States v. Parson*, 955 F.2d 858 (3d Cir. 1992), a case in which the Third Circuit held that a defendant's prior conviction for first-degree "reckless endangering" was a "crime of violence" under the career offender Guideline. *Id.* at 860. The Third Circuit observed that "crimes such as drunk driving . . . present a serious risk of physical harm to a victim and therefore qualify as predicate 'crimes of violence' for purpose of the career offender Guideline." *Id.* at 874; *see also United States v. McQuilkin*, 97 F.3d 723, 729 (3d Cir. 1996) (reaffirming that "'purely reckless' crimes continue to count as predicate offenses for purposes of 'career offender' consideration").

Following *Begay*, the Third Circuit has since recognized that *Parson* is no longer good law:

> In *Parson*, we held that a reckless endangering conviction was a crime of violence under §4B1.2(a) of the federal sentencing guidelines. 955 F.2d at 860. In 2008, the Supreme Court decided *Begay*, which held that a DUI conviction under New Mexico law did not fall within the definition of a "violent offender" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e)(2)(B)(ii), since violent felonies were limited to offenses which "typically involve purposeful, violent, and aggressive conduct." 553 U.S. at 144-45, 128 S. Ct. 1581 (citation and internal quotation marks omitted). Post-*Begay*, we have held that "a conviction for mere recklessness cannot constitute a crime of violence" under the federal sentencing guidelines. *United States v. Lee*, 612 F.3d 170, 195-97 (3d Cir. 2010).

*Aguilar v. Att'y Gen. of United States*, 663 F.3d 692, 698 n.12 (3d Cir. 2011). Taken together, this precedent suggests that if Brown had made the argument he currently advances—that the "recklessness" *mens rea* in the Delaware criminal statute rendered it ineligible for treatment as a career-offender predicate—he would clearly have lost under *Parson*. It therefore follows that pre-*Begay* binding precedent foreclosed Brown's argument that Arson in the Third Degree is not a "crime of violence," as, its *mens rea* is mere recklessness.

The Government's only response to this line of argument is its familiar claim that Brown's Delaware

offense is not a "recklessness" crime because it requires the intentional act of lighting a fire. (Appellee's Br. at 46-47). But we have accepted Brown's claim in the first instance that Arson in the Third Degree is fairly characterized as a crime requiring a *mens rea* of recklessness, and the Government offers no counterargument to the notion that *Begay* changed the law in the Third Circuit for "recklessness" offenses. Put simply, the Government does not claim that Brown's "recklessness" argument, currently advanced in this Court, would have had any chance of prevailing in the Third Circuit at the time of his conviction, nor does it dispute that *Begay* changed Third Circuit law and overruled *Parson*. Because prior to the Supreme Court's ruling in *Begay* Third Circuit precedent foreclosed the argument advanced today, Brown has demonstrated that § 2255 would provide an inadequate or ineffective remedy.

### III.  Conclusion

For the foregoing reasons, we REVERSE the decision below and REMAND with instructions to reduce Brown's sentence to reflect our finding that he is not a career offender within the meaning of § 4B1.1.

Statement of EASTERBROOK, *Chief Judge*, concerning the circulation under Circuit Rule 40(e). Justices of the Supreme Court sometimes file statements explaining why they have voted not to grant certiorari, even though they doubt the soundness of the decision under review. See, e.g., *Calhoun v. United States*, 133 S. Ct. 1136 (2013) (statement of Sotomayor, J.). Likewise appellate judges may explain why they have not voted to hear a case *en banc*, even though they doubt the soundness of the panel's decision. See, e.g., *Freeman United Coal Mining Co. v. Director, OWCP*, 999 F.2d 291 (7th Cir. 1993) (statement of Easterbrook, J.), vacated, 512 U.S. 1231 (1994), in light of *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). Here, too, I have doubts about the panel's decision, though I do not think that a hearing *en banc* would help.

The panel holds that a federal prisoner may use 28 U.S.C. §2241 to contest the length of his sentence when a later decision of the Supreme Court shows that the judge's calculation of a range under the Sentencing Guidelines was erroneous. It reaches this conclusion despite 28 U.S.C. §2255(e), which provides: "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." Relying on *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), the panel concludes that a §2255

motion is "ineffective" when the prisoner relies on a non-constitutional decision rendered after the statute of limitations in §2255(f) expired. And relying on *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), the panel concludes that collateral relief must be available for errors that affect the length of sentence, though not the validity of the conviction—at least when the sentence was imposed before *United States v. Booker*, 543 U.S. 220 (2005), held that the Sentencing Guidelines are not mandatory. See *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013).

No other circuit follows either *Davenport* or *Narvaez*. The latter decision has been rejected explicitly by *Sun Bear v. United States*, 644 F.3d 700, 705 n.8 (8th Cir. 2011) (en banc), and implicitly by *McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011). The former is incompatible with the law of many. See, e.g., *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008); *Poindexter v. Nash*, 333 F.3d 372, 382 (2d Cir. 2003); *Okereke v. United States*, 307 F.3d 117 (3d Cir. 2002); *San-Miguel v. Dove*, 291 F.3d 257, 261 n.2 (4th Cir. 2002); *Wooten v. Cauley*, 677 F.3d 303, 307–08 (6th Cir. 2012); *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012). And the holding that the panel produces by combining *Davenport* with *Narvaez* puts us in conflict with at least two circuits, as the panel acknowledges, with no other circuit on our side. See *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc); *In re Bradford*, 660 F.3d 226 (5th Cir. 2011). *Gilbert* observed: "Every circuit to decide this issue has reached the same conclusion we do: the savings clause of §2255(e) does not permit a prisoner to bring in a §2241 petition a guidelines miscal-

culation claim that is barred from being presented in a §2255 motion" (640 F.3d at 1312).

*Davenport* held that §2255 is "ineffective" if the argument was bound to fail at the time it should have been presented. This is an abnormal use of "ineffective." Think of "ineffective assistance of counsel." We do not call a lawyer's work "ineffective" just because the defendant's arguments have been considered and rejected by the Supreme Court or the local circuit. A lawyer's work satisfies the "ineffective assistance" doctrine if counsel presents the best available defense, even if that defense is doomed. So too with §2255. A motion under §2255 could reasonably be thought "inadequate or ineffective to test the legality of [the prisoner's] detention" if a class of argument were categorically excluded, but when an argument is permissible but fails on the merits there is no problem with the adequacy of §2255.

Brown could have presented at sentencing, on appeal, and via motion under §2255 his current argument that he should not have been classified as a career offender under U.S.S.G. §4B1.1. Actually he *did* contend under §2255 that his lawyer's failure to object at sentencing to the use of his prior conviction for arson amounted to ineffective assistance of counsel. That contention was rejected, not because §2255 disallowed it, but on the merits, because it was based on a misunderstanding of how suspended sentences work in Delaware. 2003 U.S. Dist. LEXIS 1928 *15 (D. Del. Feb. 3, 2003). Brown did not present at sentencing, on appeal, or through §2255 the argument that has succeeded today: that arson in the

third degree under Delaware law is not "violent" for federal sentencing purposes. Our panel thinks that *Begay v. United States*, 553 U.S. 137 (2008), supports Brown, and that may be so, but *Begay* did not hold that either a direct appeal or a motion under §2255 would have been "inadequate or ineffective" to present the argument that our panel now accepts.

*Davenport* believed that "sure to fail on the merits" and "ineligible for consideration on the merits" come to the same thing as a practical matter, so that §2255 is unavailable or ineffective in either situation. Then §2241 affords relief if the argument becomes stronger in later years. Yet "wrong on the merits" and "the court won't listen" differ. The petitioner in *Bousley v. United States*, 523 U.S. 614 (1998), contended that his omission of a legal argument should be excused because, if it had been raised, the court was sure to reject it. Five years after Bousley was sentenced, the Supreme Court held in *Bailey v. United States*, 516 U.S. 137 (1995), that the word "use" in 18 U.S.C. §924(c)(1) means something different from what every court of appeals had understood it to mean. Bousley contended that he was entitled to the benefit of *Bailey*. He was met with the reply that his failure to present the line of argument that ultimately prevailed in *Bailey* was a procedural default; to this he replied that a losing argument should be treated the same as an argument that can't be made at all. The Supreme Court rejected that contention and held that normal rules of forfeiture and default apply, even if circuit law is conclusive against the accused. 523 U.S. at 621–24.

To the contention that an argument's legal futility is the same as a court's inability to entertain the argument, the Supreme Court was dismissive; it observed that "futility cannot constitute cause [for an argument's omission] if it simply means that a claim was 'unacceptable to the particular court at that particular time.'" 523 U.S. at 623, quoting from *Engel v. Isaac*, 456 U.S. 107, 130 n.35 (1982). The panel in *Davenport* stated: "It would just clog the judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings." 147 F.3d at 610. *Begay* and *Engel* show that the Justices have a different view. Arguments that contradict circuit law can serve a purpose: If Brown had presented his argument earlier, *Begay v. United States* might have come in 2000, as *Brown v. United States*. The reason *Begay* came out as and when it did was that Begay made his argument at sentencing and pursued it all the way to the Supreme Court. Brown could have done the same but didn't. *Bousley* shows that someone who knuckles under to adverse authority at the appellate level cannot later contend that an apparently losing position is the same as a position that the judiciary refuses to entertain. The perspective of the Supreme Court, articulated in *Begay* and *Engel*, prevails over the perspective of the panel in *Davenport*; and at all events one circuit's 'druthers about optimal litigation practice do not render §2255 "inadequate or ineffective" to present a contention.

*Begay* has a proviso: relief under §2255 can be available, even if a contention has been forfeited, when

a later decision shows that the prisoner is actually innocent of a federal crime. See also *Davis v. United States*, 417 U.S. 333 (1974). Since §2255 provides relief to prisoners actually innocent of any federal crime, §2254(e) precludes resort to §2241. Anyway, Brown does not claim to be innocent of distributing cocaine or of possessing a firearm despite a prior felony conviction, the crimes of which he was convicted. *Bousley* and *Davis* hold that relief is available to a person stuck in prison for an act that the law does not make criminal. Brown is not remotely in that fix. He contends instead that his sentence might have been shorter had the district judge understood that his earlier arson conviction is not a "crime of violence" for the purpose of U.S.S.G. §4B1.1. The Supreme Court has never held that a person can be "innocent" of a longer sentence—and in *Hope v. United States*, 108 F.3d 119 (7th Cir. 1997), we concluded that §2255(h)(1), which allows a second or successive collateral attack if the evidence did not permit a trier of fact to find the defendant guilty, does not authorize a contention that a prisoner is "innocent" of a sentence's particular length. One can be innocent of a crime, *Hope* observed, but not of a sentence.

The prisoner in *Schriro v. Summerlin*, 542 U.S. 348 (2004), contended that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), should be applied retroactively because it affects the length of sentences. The Supreme Court rejected that contention, distinguishing decisions about the legality of primary conduct (*Davis* and *Bousley*) from decisions about the length of sentences. Other than in capital litigation, the Justices have never held that a

person can be innocent of a sentence. So the actual-innocence exception to the rules of default does not help Brown.

On this subject *Davenport* supports the United States rather than Brown. *Davenport* had two petitioners. One (Davenport) contended that his sentence was too long, the other (Nichols) that he had not committed a crime. The panel ruled in favor of Nichols and against Davenport, who was outside the actual-innocence rule. 147 F.3d at 609–10. Davenport protested an enhancement as an armed career criminal, and he lost; Brown, whose situation is functionally equivalent to Davenport's, nonetheless prevails. The reason is *Narvaez*, which today's panel implicitly treats as overruling the part of *Davenport* that concerned Davenport himself. I grant that *Narvaez* deemed an unduly long sentence equivalent to conviction for a non-crime, but what I have said so far shows why that is untenable.

Section 2255 can be used to reduce a sentence whose length stems from a legal error. See *Glover v. United States*, 531 U.S. 198 (2001). This shows yet again why §2255 is neither inadequate nor ineffective to deal with problems such as Brown's—when the defendant presents his contentions properly. The difficulty with *Narvaez* is that it overlooks the defendant's forfeiture, just as today's panel overlooks Brown's.[†] When a

---

[†] *Narvaez* also permits an appeal from an order denying relief under §2255 even when the district court's error is entirely

(continued...)

defendant omits arguments at trial or sentencing, and therefore must rely on the "actual innocence" doctrine to excuse the default, it matters whether the problem concerns guilt or the length of the sentence. I could see extending the actual-innocence doctrine of *Davis* and *Bousley* to sentences that exceed the statutory maximum, but both Narvaez and Brown received sentences less than the cap. The disputes in both cases concern how judges chose among authorized sentences.

*Davenport* and *Narvaez* in conjunction vitiate two amendments to §2255 made by the Antiterrorism and Effective Death Penalty Act of 1996. Section 2255(f) adds a one-year statute of limitations and specifies four kinds of events that open new one-year periods. Section 2255(h) adds a limit on multiple §2255 motions, with two exceptions. Brown filed and lost a §2255 motion several years ago, so he can file another only if §2255(h) allows. Section 2255(h)(2) says that a successive motion is permissible when the prisoner relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavail-

---

[†] (...continued)

statutory, despite 28 U.S.C. §2253, which limits certificates of appealability to substantial constitutional issues. See *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000). An error of law differs from a violation of the Constitution. See *Wilson v. Corcoran*, 131 S. Ct. 13 (2010); *Bradshaw v. Richey*, 546 U.S. 74 (2005); *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991). But that problem does not affect this case, so I do not pursue the subject.

able." Brown cannot use this exception, because *Begay* is not a constitutional decision. See also *Gray-Bey v. United States*, 209 F.3d 986 (7th Cir. 2000) (same conclusion for *Bailey*). Nor has the Supreme Court declared *Begay* to be retroactive.

Even if *Begay* were constitutional, and this were Brown's first collateral attack, he would lose because he took too long to file his petition. Section 2255(f)(3) gives a prisoner one additional year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review". For this purpose, a court of appeals as well as the Supreme Court may declare a decision retroactive, see *Fischer v. United States*, 285 F.3d 596 (7th Cir. 2002); *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001), and I assume for the sake of argument that *Begay* qualifies. But *Begay* was decided on April 16, 2008, and Brown did not launch his current collateral attack until 2012.

Brown's delay, and his prior resort to §2255, independently block that statute's use to obtain collateral review. He could have waited until the Supreme Court decided *Begay* and then filed under §2255 within the next year. Instead he squandered his opportunity under §2255 by filing while it had little chance of success. Brown's litigation strategy may have been "inadequate or ineffective"; there's no such flaw in §2255.

The AEDPA did not amend §2241 and does not limit its scope. See *Felker v. Turpin*, 518 U.S. 651 (1996). But the

reason Brown cannot use §2241 lies not in that statute but in §2255(e). What sense can it make to hold that the 1996 amendments to §2255 are self-defeating? Yet, by combining *Davenport* and *Narvaez*, the panel concludes that §2255(f) and §2255(h) make §2255 as a whole "inadequate or ineffective" because the AEDPA sets limits. Laws should not be interpreted as self-cancelling.

The AEDPA's amendments are designed to vindicate society's interest in the finality of criminal judgments. See *Harrington v. Richter*, 131 S. Ct. 770 (2011). The panel's decision undermines finality by authorizing successive, belated, collateral attacks. Brown was convicted in 1996; the conviction and sentence were affirmed, 173 F.3d 422 (3d Cir. 1998); certiorari was denied, see 526 U.S. 1153 (1999); he filed and lost a collateral attack under §2255, 2003 U.S. Dist. LEXIS 1928 (D. Del. Feb. 5, 2003); our opinion requires a new sentencing in 2013 to apply a 2008 decision. The panel's decision also undermines the AEDPA's provision that constitutional claims can support successive collateral attacks while statutory claims cannot; under today's opinion, by contrast, it is easier to get belated, successive review of a statutory (or Guidelines) claim than of a constitutional claim.

Finally, the panel's decision undermines one of §2255's principal objectives: directing post-judgment litigation to the sentencing court. Litigation under §2241 occurs in the district with jurisdiction over the prisoner's current custodian. See *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Brown was sentenced in Delaware, and the third circuit

may well disagree with our conclusion about how Delaware's crime of arson in the third degree should be classified for the purpose of U.S.S.G. §4B1.1. Brown litigated and lost in the third circuit; he gets to try the seventh circuit because he is in a federal prison in Indiana; and if he had lost here, and later been moved to Colorado or Texas, he could have tried again. It is not wise to authorize sequential litigation in multiple circuits, when the AEDPA embodies a legislative decision that this sort of collateral litigation should not proceed in *any* court.

Notwithstanding what I have said, *Davenport* and *Narvaez* enjoy support in this circuit. I appear to be the only judge who doubts their soundness. It would therefore be pointless to sit *en banc*. Resolution of the conflict belongs to Congress or the Supreme Court. That is why I did not call for a hearing *en banc* following the panel's circulation under Circuit Rule 40(e).