WILSON, Circuit Judge,
joined by JILL PRYOR, Circuit Judge, dissenting:
I would reverse the denial of Dan McCarthan’s claim and remand for the district court to consider the merits in the first instance. I am, for the most part, persuaded by Judge Jordan’s interpretation of the savings clause. I agree with his textual analysis of the clause, but I believe the equitable nature of the Great Writ dictates a different result than he reaches.
Judge Jordan states that the equitable nature of the Writ leads him to conclude that the savings clause applies to a prisoner who asserts a claim of actual innocence but not to a prisoner who, like MeCarthan, argues that his sentence exceeds the statutory maximum. In my opinion, the savings clause applies to both types of prisoners. A prisoner who is actually innocent is in the same position as a prisoner whose sentence exceeds the statutory maximum— each prisoner is being deprived, of his liberty even though no law authorizes the deprivation. As my colleague Judge Hill once said: “If a petitioner can show that he is illegally incarcerated, he is entitled to release. Fairness requires it. Justice is the ultimate goal in the grant of the Writ.” Rozier v. United States, 701 F.3d 681, 690 (11th Cir. 2012) (Hill, J., dissenting).
Justice demands that, at the very least, MeCarthan receive a chance to “test the legality of his detention.” See 28 U.S.C. § 2255(e).
MARTIN, Circuit Judge,
joined by JILL PRYOR, Circuit Judge, dissenting.
Dan MeCarthan was sentenced to serve 211 months (17.5 years) in prison based on this Court’s mistake of the law. Mr. MeCarthan had been convicted of felony offenses earlier in his life, and he was found with a firearm, so he was due to go to prison. Ordinarily, a felon convicted of possessing a firearm faces up to 10 years in prison, but no more. 18 U.S.C. § 924(a)(2). On the other hand, when the person has three earlier convictions for crimes that are either a “violent felony” or a “serious drug offense,” the Armed Career Criminal Act (ÁCCA), id. § 924(e), increases his sentence to no less than 15 years and up to life. Because Mr. MeCar-than was sentenced under ACCA as though he had three qualifying convictions, he got a sentence that was seven and one-half years longer than the statute would have otherwise allowed. He got this much longer sentence because in his past he had *1112 been convicted of walkaway escape,[1] and Eleventh Circuit precedent characterized walkaway escape as a “violent felony.” See United States v. Gay, 251 F.3d 950, 953-55 (11th Cir. 2001) (per curiam). But this Court’s ruling in Gay was wrong. Well after' Mr. McCarthan began serving his 17.5-year sentence, the Supreme Court taught us that escape is not a “violent felony.” Its decisions in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), overturned our decision in Gay. See United States v. Lee, 586 F.3d 859, 874-75 (11th Cir. 2009).
Mr. McCarthan is now asking us to make right what we caused to go wrong when he got his 17.5-year sentence. The panel that first heard Mr. MeCarthan’s case (I was a member) applied Eleventh Circuit precedent. See McCarthan v. Warden, FCI Estill, 811 F.3d 1237 (11th Cir. 2016). Under that precedent, the panel concluded that he could not satisfy the jurisdictional test our Court created for habeas cases in which a prisoner is seeking relief from a wrongly imposed ACCA sentence. So we denied him relief. Id. at 1256-57. The government did not seek rehearing from our ruling. Indeed, the United States subscribed to this Circuit’s habeas jurisprudence as set out in the McCarthan panel opinion, and anyway it had won.
Nevertheless, a majority of this Court voted to vacate the panel’s opinion and hear Mr. MeCarthan’s case en banc. Since the government never asked us to rehear his case, one might think en banc rehearing would be good news for Mr. McCar-than. But today’s majority opinion not only does nothing to change Mr. MeCarthan’s loss into a win, it puts relief out of reach for others who have been sentenced based on a legal mistake. In other words, this Court voted to rehear Mr. MeCarthan’s case not because the Court believed the panel was wrong in its application of our circuit precedent, but instead because the Majority wanted to overturn that precedent. Before today, the path to relief for prisoners like Mr. McCarthan has been narrow, indeed. Today’s majority opinion cuts off that path entirely.
The Majority concludes that Mr. MeCar-than’s claim cannot be recognized under the federal statute that governs postcon-viction challenges by federal prisoners. My colleagues in dissent say that the law recognizes his claim, and would remand Mr. MeCarthan’s case to be evaluated anew on the merits. My view is slightly different, so I write separately to say how I believe Mr. MeCarthan’s case should turn out, and why.
I. THE SAYINGS CLAUSE
The majority opinion characterizes this case as a rather dry and complex exercise in statutory construction. A reader could almost miss the fact that what we are talking about is who, among the hundreds of thousands of human beings incarcerated in U.S. prisons, will have access to relief *1113 under a writ of habeas corpus.[2] The writ of habeas corpus is of such fundamental importance to this nation’s legal system that it is known as the Great Writ. See Ex parte Bollman, 8 U.S. (4 Cranch) 75, 95, 2 L.Ed. 554 (1807) (Marshall, C.J.). The writers of our Constitution recognized the importance of the writ of habeas corpus when they enshrined its existence in that document. U.S. Const. art. I, § 9, cl. 2. The Great Writ is the tool meant to be available to any person who finds himself in jail when he ought not be there.
In 1948, for reasons explained by the Majority and Judge Rosenbaum, 28 U.S.C. § 2255 was enacted. Then in 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) added limitations to § 2255 which remain in effect today. Under 28 U.S.C. § 2255, once a federal prosecution results in a final conviction, the prisoner is generally allowed to challenge the legality of his detention only through a § 2255 motion, and not through a petition for writ of habeas corpus. See 28 U.S.C. § 2255(e) (“An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained .... ”). Significant to many cases like Mr. McCarthan’s is that the relief offered by § 2255 is narrowly defined and tightly administered. A prisoner is generally allowed to.challenge his conviction and sentence by way of a § 2255 motion just one time, id. § 2255(h), and that challenge generally must be made within one year of his conviction becoming final, id. § 2255(f). While the statute’s goáls of tight deadlines and finality might seem desirable, they were implemented at the same time the federal prison population was exploding; federal sentences were getting longer; and the U.S. Sentencing Guidelines were requiring judges to make many rulings before arriving at the sentence imposed.[3] So it is a fact of life for these prisoners that they can sit in jail for years or even decades before the Supreme Court comes to tell inferior federal courts (like this one) about a mistake the court made when a sentence was imposed. This has happened to Mr. McCarthan and so many others. This Court was wrong when it said that Mr. McCarthan’s earlier conviction for walkaway escape required his sentence to be (significantly) longer than the ten-year cap called for by the statute that otherwise would have governed his sentence. So while this case is about how we construe the words of a statute, it is also about whether Mr. McCarthan and those like' him should continue to bear the burden of the mistake the federal courts made in sentencing him. I part ways with the Majority, because I think not. And while the Majority highlights the rule in the Tenth Circuit, the fact is that most every other U.S. Court of Appeals to have reached this question thinks not as well.
The History of Section 2255 in the Eleventh Circuit
Section 2255 generally allows a prisoner to bring a new attack (the statute uses the *1114 term “second or successive motion”) on his conviction only if his claim falls into one of the two narrow categories in § 2255(h). That is: (1) a claim of actual innocence based on newly discovered evidence, id. § 2255(h)(1); or (2) a claim based on “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,” id. § 2255(h)(2).
Prisoners like Mr. McCarthan, who want to challenge their detention on the basis of a new, retroactive statutory interpretation by the Supreme Court, do not fall under either category of § 2255(h). He is hanging his hat on a new rule of statutory not constitutional law. Since he cannot proceed under § 2255(h), he seeks to proceed under the “savings clause” [4] of § 2255(e). The savings clause says a prisoner can bypass the constraints of § 2255(h) and file a habeas petition challenging his detention if it “appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention.” Id. § 2255(e). That leaves us to decide for Mr. McCarthan (and many others): when is § 2255 “inadequate or ineffective to test the legality of [a prisoner’s] detention”?
A lot of ink has spilled and many lives have been touched as a result of this Court’s work on how to apply the savings clause. The Court offered its first interpretation of the savings clause in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999). Wofford established that, in order for a prisoner to rely on the savings clause, he had to show his claim had been “squarely foreclosed” by circuit law at the time of his trial, appeal, and first § 2255 motion. 177 F.3d at 1244. In other words," the prisoner was required to show that the courts in this Circuit would have ruled against him on this claim at the time he was convicted and sentenced, and when he appealed, and when he filed for postconviction relief by way of a § 2255 motion. To the extent I have been involved in these cases, I have always believed that Wofford was wrong and that this Court’s rulings on savings clause cases that have since followed Wofford are wrong as well. See Bryant, 738 F.3d at 1300 (Martin, J., concurring in part and dissenting in part); Williams v. Warden, Fed. Bureau of Prisons, 713 F.3d 1332, 1350-56 (11th Cir. 2013) (Martin, J., dissenting); Gilbert, 640 F.3d at 1330-36 (Martin, J., dissenting).
Wofford’s “squarely foreclosed” requirement became the bedrock of this Court’s savings clause jurisprudence. See Bryant, 738 F.3d at 1272 (‘What makes the § 2255 proceeding ‘inadequate, or ineffective’ for *1115 petitioner Bryant is that he had no ‘genuine opportunity’ to bring his § 924(e) claim because Circuit precedent squarely foreclosed that claim throughout his trial, direct appeal, and first § 2255 motion.”).[5] Under this Court’s “squarely foreclosed” requirement, each time we consider a prisoner’s claim for savings clause relief, we must look backward and ask whether the petitioner’s original § 2255 proceeding was “inadequate or ineffective to test the legality of his detention.” But the savings clause nowhere requires us to do this. Rather, the savings clause says that the writ of habeas corpus is preserved for eases in which § 2255 “is inadequate or ineffective to test the legality of [the prisoner’s] detention.” 28 U.S.C. § 2255(e). The plain text of the statute allows a prisoner to seek habeas relief when § 2255 is “inadequate or ineffective” to bring his current challenge to the legality of his detention. When the statute is read as Congress wrote it, in the present tense, it is clear that a prisoner can bring a habeas petition if § 2255 is — at the time the petition is filed in federal court — “inadequate or ineffective” to test the legality of the detention.
The Majority is right when it says that the rules this Court created for these cases have not worked well. I have seen the problems resulting from this circuit’s “squarely foreclosed” rule play out over the years. For example, in Albert Williams’s 2013 appeal, this Court left him to serve a 293-month sentence (more than 24 years), rather than a sentence that, by law, should have been capped at 10 years. Williams, 713 F.3d at 1334. Relief had to be denied to him, this Court said, because at the time he challenged his sentence on direct appeal, and then again at the time he filed his § 2255 motion, our Court had never decided the issue of whether his prior convictions for burglary should be considered “violent felonies” to enhance his sentence. Id. at 1348. The Williams panel blinded itself to what the state of the law was at the time we ruled on his § 2255 motion in 2013.. We said that because no Eleventh Circuit precedent had ruled on whether a Florida burglary conviction is an ACCA-qualifying offense at the time of his direct appeal in 1999, his claim was not “squarely foreclosed.” Id. That meant, so the logic went, that a § 2255 motion would not have been ineffective as a way to raise the claim, and so Mr. Williams was not entitled to relief. Id. at 1345. For my part as a member of the Williams panel, I asked how in the world this Court’s lack of having ruled on a question in the past could possibly give us the power to keep *1116 Mr. Williams in prison for more than 24 years when Congress never gave us the power to keep him in prison for more than 10. Id at 1353 (Martin, J., dissenting) (“The correct question to ask is whether Mr. Williams was erroneously sentenced as an armed career criminal in light of Begay. If he was, the federal courts never had jurisdiction to sentence him above the 10 year maximum allowed by law. The existence or nonexistence of circuit precedent which conflicts with Begay cannot operate to confer jurisdiction on this Court.”). Now years have passed and this Court has only recently resolved the question of whether Florida burglary (the same statute Mr. Williams was litigating back in 2013) is a “violent felony” for purposes of ACCA, and held it is not. See United States v. Esprit, 841 F.3d 1235, 1237 (11th Cir. 2016). Meanwhile, Mr. Williams remains in prison based on this mistake we made in lengthening his sentence.[6]
I read § 2255 to allow a prisoner to file a habeas petition under the savings clause when he shows that, at some point after his first § 2255 proceeding, there was a retroactive decision from an authoritative federal court, which interpreted a statute in a way that now reveals a fundamental defect in that prisoner’s conviction or sentence. Both the Sixth and Seventh Circuits interpret the savings clause this way. See Hill v. Masters, 836 F.3d 591, 595 (6th Cir. 2016) (“When seeking to petition under § 2241 based on a misapplied sentence, the petitioner must show (1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion, and (3) that the misapplied sentence presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect.”); Brown v. Caraway, 719 F.3d 583, 586 (7th Cir. 2013) (“First, the prisoner must show that he relies on a statutory-interpretation case, rather than a constitutional case. Second, the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion. The third condition is that the sentence enhancement have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding.” (quotations and citations omitted and alterations adopted)). See also United States v. Surratt, 797 F.3d 240, 274 (4th Cir. 2015) (Gregory, J., dissenting), reh’g en banc granted (Dec. 2, 2015) (“§ 2255 is ‘inadequate or ineffective’ when the retroactivély-applicable change in the law that the prisoner seeks to take advantage of occurs subsequent to his first § 2255 motion....[,] the asserted error represents a fundamental defect, [and] the prisoner cannot satisfy the gatekeeping provisions of § 2255 because he relies on a new rule that is not one of constitutional law.” (quotation omitted and alterations adopted)).
The Legislative History of Section 2255 and the Supreme Court’s Jurisprudence
The legislative history of § 2255 and the Supreme Court’s habeas corpus jurisprudence confirm this view. Before § 2255 became law in 1948, federal prisoners who wanted to collaterally attack their conviction or sentence had to file a petition for habeas corpus in the district where they were in prison. This caused the few district courts located near federal prisons to be overwhelmed with habeas petitions. See United States v. Hayman, 342 U.S. *1117 205, 213-15, 72 S.Ct. 263, 269-70, 96 L.Ed. 232 (1952). Congress enacted § 2255 to address this problem. The new statute “replaced traditional habeas corpus for federal prisoners ... with a process that allowed the prisoner to file a motion with the sentencing court.” Boumediene v. Bush, 553 U.S. 723, 774, 128 S.Ct. 2229, 2264, 171 L.Ed.2d 41 (2008).
The Supreme Court has told us more than once that § 2255 was “designed to strengthen, rather than dilute, the writ’s protections.” Id. at 776, 128 S.Ct. at 2265. See also Davis v. United States, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974) (“Th[e] [legislative] history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.”); id. at 344, 94 S.Ct. at 2304 (“Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners’ rights of collateral attack upon their convictions.”); Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) (“[I]t conclusively appears from the historic context in which § 2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.”); Hayman, 342 U.S. at 219, 72 S.Ct. at 272 (“[T]he sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.”). And beyond this admonition that § 2255 was not intended to weaken the Great Writ, it is critical that when Congress passed § 2255, it did not do away with traditional habeas corpus relief. Instead, it inserted the savings clause to preserve the habeas remedy for those instances in which § 2255 “is inadequate or ineffective to test the legality of [a prisoner’s] detention.” 28 U.S.C. § 2255(e).
In 1996, Congress passed AEDPA to amend § 2255 by adding (among other things) the § 2255(h) limitations on filing more than one motion under that statute. At the same time, Congress did nothing to disturb the savings clause, and it remains a part of the law. It seems obvious that if Congress meant to bar all successive collateral attacks on convictions and sentences except for the two categories allowed by § 2255(h), it would have simply repealed the savings clause. It did not. I say AEDPA’s narrowing of the availability of the § 2255 remedy only heightens the importance of the savings clause, whose express purpose is to ensure that, in every case, federal collateral review remains “[ ]adequate [and] [ Effective.” The Supreme Court told us in Boumediene— which was decided after AEDPA — that the purpose of the savings clause is to “pro-vid[e] that a writ of habeas corpus would be available if the alternative process proved inadequate or ineffective.” Boumediene, 553 U.S. at 776, 128 S.Ct. at 2265. So when there are “challenges to both convictions and sentences that as a structural matter cannot be entertained by use of the 2255 motion,” § 2255 is “inadequate or ineffective.” Webster v. Daniels, 784 F.3d 1123, 1139 (7th Cir. 2015).
The Importance of the Savings Clause Where Section 2255 Is “Inadequate or Ineffective”
There is clearly a gap in the protections offered by § 2255 in this circumstance: when the Supreme Court interprets a statute in a way that shows a prisoner’s conviction or sentence was wrongly imposed, and that Supreme Court decision comes after the prisoner has already used up his first § 2255 proceeding. For Mr. McCarthan and other prisoners in his situation, *1118 the Supreme Court has given an interpretation of a statute that reveals they were sentenced to a term in prison longer than that authorized by Congress. And yet because the Supreme Court ruling comes after his first § 2255 proceeding is complete and because the decision is one of statutory (not constitutional) interpretation, he does not qualify to bring a second or successive motion under § 2255(h). So while Congress never gave the executive or judicial branches of government the power to keep Mr. McCarthan in jail this long, he has no remedy under § 2255. He has only the savings clause door to habeas corpus relief.
There are also other types of cases in which prisoners are serving sentences much longer than called for by law, with no remedy under § 2255, who should therefore be eligible for relief under the savings clause. For example, a prisoner who was convicted for conduct that the law does not in fact criminalize.[7] Another example is prisoners who have been sentenced based on a mistaken application of the U.S. Sentencing Guidelines at the time when sentencing judges were mandated by law to follow them. See Brown v. Caraway, 719 F.3d 583, 587-88 (7th Cir. 2013) (holding that the savings clause allows a prisoner to challenge his detention when a retroactive statutory-interpretation decision reveals the prisoner was sentenced based on an erroneous application of the mandatory Sentencing Guidelines, even where the sentence does not exceed the statutory maximum); Gilbert, 640 F.3d at 1330-36 (Martin, J., dissenting).
The Supreme Court has been clear that decisions “narrow[ing] the scope of a criminal statute by interpreting its terms” are given retroactive effect “because [such decisions] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.” Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 2522-23, 159 L.Ed.2d 442 (2004) (quotation omitted). When the Supreme Court interprets a statute and applies its ruling retroactively, but a prisoner is barred from relying on that interpretation merely because the Supreme Court decided the case after his first § 2255 proceeding was done, § 2255 has certainly “proved inadequate or ineffective,” Boumediene, 553 U.S. at 776, 128 S.Ct. at 2265, within the meaning of the savings clause. See Unthank v. Jett, 549 F.3d 534, 536 (7th Cir. 2008) (noting that the savings clause is available where “a glitch in § 2255 prevents application to [a petitioner’s] situation of a retroactive decision of the Supreme Court”).
The Majority says my reading of the savings clause would allow prisoners to make an end-run around the limitations on successive motions in § 2255(h). Maj. Op. at 1089-92. I say my reading just gives effect to the words Congress wrote. It is critical to remember that Congress preserved the savings clause as an avenue of relief for prisoners even as it passed strict *1119 restrictions on the filing of successive § 2255 motions. Under the rule the Majority adopts today, so long as the prisoner had a formal chance to raise his claim in a § 2255 motion — whether the court’s ruling on that claim was right or wrong — the § 2255 proceeding is deemed “[ jadequate [and] [ ]effective.” That means the prisoner can never file another collateral attack on his sentence unless he can meet one of § 2255(h)’s two exceptions to the successive-motions bar. This, of course, reads the savings clause right out of the statute. As I have said before, “[b]y grafting the requirements of § 2255(h) onto the savings clause, the Majority has stripped that clause of any independent meaning.” Gilbert, 640 F.3d at 1333 (Martin, J., dissenting).
As lawyers, we’re taught that an interpretation rendering a statutory clause meaningless violates the “cardinal principle of statutory construction”: that we must “give effect, if possible, to every clause and word of a statute.” Williams v. Taylor, 529 U.S. 362, 404, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). And this bromide takes on real significance when we use it to interpret a statute that governs habeas jurisdiction, because it affects so many real people who may be wrongly imprisoned. The Supreme Court has admonished us there is a “longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction.” I.N.S. v. St. Cyr, 533 U.S. 289, 298, 121 S.Ct. 2271, 2278, 150 L.Ed.2d 347 (2001). No one writing on the other side of this issue has pointed to any indication — much less a clear statement — from Congress that it intended for § 2255(h) to repeal the savings clause of § 2255(e). So the Majority’s reading should not stand. See Boumediene, 553 U.S. at 738, 128 S.Ct. at 2243 (“Congress should ‘not be presumed to have effected such denial of habeas relief absent an unmistakably clear statement to the contrary.’ ” (quoting Hamdan v. Rumsfeld, 548 U.S. 557, 575, 126 S.Ct. 2749, 2764, 165 L.Ed.2d 723 (2006) (alteration adopted))).
Federal judges wield enormous power. But we are human beings who make mistakes. The Majority’s interpretation of § 2255 leaves federal judges unaccountable when we wield our power to take away people’s liberty for longer than the law allows. This is particularly striking here, where both of the other branches of government make our mistake clear. The Legislative branch passed a law allowing Mr. McCarthan’s crime to be punished for up to ten years in prison, but no more. The Executive branch rejected the position the Majority takes here — to the extent that our Court had' to bring in another lawyer to even advocate for the position it adopts today. And now the Majority, on behalf of the Judicial branch, has made a rule that prevents federal judges from correcting an illegal sentence. A system of government set up with branches to check and balance each other simply should not work this way. No one branch should be able to insulate its mistakes from its own review, much less the review of the other branches. Most anyone performs better, day in and day out, when they know they can be called to account for getting it wrong. Federal judges are no different.
II. THE MERITS OF MR. MCCARTHAN’S PETITION
In the midst of all of this debate about these statutes, it is important to now return to Mr. McCarthan’s ease. I agree with Judge Rosenbaum that Mr. McCarthan’s case should be remanded to the District Court. However, I write separately because I believe the law limits what the District Court can do on remand. My un *1120 derstanding of the law tells me Mr. McCarthan is eligible for habeas relief under the savings clause, so I turn to the merits of his habeas petition. Mr. McCarthan argues he was sentenced to a term of imprisonment beyond that authorized by law because he does not have the three predicate felony convictions necessary to support the ACCA enhancement. He is right, and I would grant him relief.
Throughout its prosecution of Mr. McCarthan for being a felon in possession of a firearm, the government pointed to three (and only three) prior convictions as predicates for the ACCA enhancement. Those were: (1) a 1987 conviction in Florida for possession of cocaine with intent to sell or deliver; (2) a 1992 conviction in Florida for escape; and (3) a 1994 conviction in Florida for third-degree murder. Only these prior convictions were listed in the indictment. And these convictions were the only ones offered at Mr. McCarthan’s guilty plea hearing to justify a 15-year minimum sentence under ACCA. Again when Mr. McCarthan was sentenced, the government mentioned no other convictions as qualifying him for an ACCA sentence.
Everyone agrees that Mr. McCarthan’s escape conviction would not be accepted as a valid ACCA predicate for him if he were sentenced today. Both the Supreme Court and this Circuit have said so. Lee, 586 F.3d at 874; Chambers, 555 U.S. at 122, 129 S.Ct. at 687. This means, even if we assume that Mr. McCarthan’s two remaining prior convictions properly support his longer sentence, all we have is two ACCA predicates. This is one short of the number of 'convictions required to keep Mr. McCarthan behind bars for more than 10 years. Because escape does not qualify as one of the three convictions required for an ACCA sentence of longer than ten years, and because the government offered no proof of any prior convictions other than the three it listed in Mr. McCarthan’s indictment, Mr. McCarthan is being held in violation of § 924(a)(2), which sets a ten year limit on his prison term.
When the government asks a court to give a person a sentence above the term the statute sets as a limit, the government bears the burden of proving the longer sentence is proper under the law and the facts of the case. Lee, 586 F.3d at 866 (“The [government] bears the burden of proving that a sentencing enhancement under the ACCA is warranted.”); see also United States v. Young, 527 F.3d 1274, 1277 (11th Cir. 2008). Here, the government asked for an enhanced sentence for Mr. McCarthan based solely on the three convictions listed in Mr. McCarthan’s indictment. The government never mentioned any other basis for an enhanced sentence.
It is true that the PSR listed two other earlier felony convictions for Mr. McCarthan, those being two 1988 Georgia convictions for possession of cocaine. It is also true that, at sentencing, Mr. McCarthan did not object to any of the prior convictions in the PSR, and that the District Court adopted the facts stated in the PSR. But the PSR did not identify which convictions qualified Mr. McCarthan for an ACCA enhancement. So when he did not contest the PSR, Mr. McCarthan conceded only that these Georgia cocaine convictions existed. Whether these convictions qualify as “serious drug offenses” under ACCA is a separate question, and one that was never even discussed at any court proceeding that resulted in his 211-month sentence. The government never mentioned them. The sentencing judge never mentioned them. I write separately to reject any idea that it was incumbent upon Mr. McCar-than to interrupt his sentencing hearing, a time where he was no doubt nervously *1121 awaiting to hear his fate, to bring up these other convictions that no one else thought worthy of mention. He simply had no burden to disprove something the government never sought to prove in the first place. To place that burden on him would surely turn the sentencing process on its head.
To place that burden on him also defies our own precedent. Our Court has a waiver rule that says where the government never told the District Court (or for that matter the defendant being sentenced) that a particular conviction is a reason to impose a longer sentence, the government is barred on appeal from arguing that the previously unmentioned felony can now take the place of a conviction that was relied upon by the sentencing court, but which no longer supports the sentence. In Bryant, this Court considered and rejected the government’s effort to bring up on appeal new bases for Mr. Bryant’s longer sentence, when the reasons it gave at the time of his sentencing no longer supported the sentence he got. In Bryant, like here, the government sought to substitute a pri- or burglary conviction for a concealed-firearm conviction that no longer worked, when “[a]t no time during Bryant’s direct criminal proceedings did the government ever rely on the burglary conviction as a predicate felony for § 924(e) purposes.” 738 F.3d at 1279. We “den[ied] the government’s request to substitute the burglary conviction” because “the government waived this burglary issue at the initial sentencing.” Id. See also United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009) (stating that, while the government is “entitled to an opportunity to offer evidence and seek rulings from the sentencing court in support of an enhanced sentence,” the government is “entitled to only one such opportunity”). Like Bryant, the government in this case “never suggested at any point” prior to collateral review that Mr. McCarthan’s Georgia cocaine convictions could serve as ACCA predicates. 738 F.3d at 1279. The “government cannot offer for the first time on appeal a new predicate conviction in support of an enhanced ACCA sentence.” United States v. Petite, 703 F.3d 1290, 1292 n.2 (11th Cir. 2013). This is as it should be, because our Court has never allowed criminal defendants to contest their harsh sentence on appeal for reasons they had not presented to the sentencing court. I cannot sanction applying different rules to opposing parties appearing in this Court in one and the same proceeding.
I would grant Mr. McCarthan relief and send his case to the District Court with direction that he be resentenced to a term of no more than ten years. Mr. McCarthan has, of course, already served more than ten years in the penitentiary. I respectfully dissent from this Court’s treatment of Mr. McCarthan, as well as its remaking of our law as it governs habeas corpus for those sentenced in .this Circuit.

. In 1992, Mr. McCarthan was convicted of escape in Florida for walking away from an unsecured correctional facility without permission. The PSR describes his escape conviction as follows:
According to court records, on February 14, 1988, the defendant signed out for work from the Tampa Community Corrections Center with a return time of 1:30 a.m. on February 15, 1998 [sic]. He failed to return to [sic] by 1:30 a.m., as required. The defendant returned to the center at 12:58 p.m. on February 15, 1998 [sic]. The escape report was canceled. At 3:30 p.m. on February 15, 1988, the defendant left the center without permission, and an escape report was again initiated.

. The Department of Justice estimates that in 2015 (the latest year for which it has published statistics), there were 328,500 people in federal correctional custody. See Bureau of Justice Statistics, U.S. Dep’t of Justice, Correctional Populations in the United States, 2015, at 12 (Dec. 2016).

. Sections 2255(f) and (h) were passed in 1996 as part of AEDPA. In 1990, there were 58,838 people incarcerated in federal prisons; a decade later, that number had risen to 133,921. See Bureau of Justice Statistics, U.S. Dep't of Justice, Prisoners in 2000 2 (Aug. 2001). As mentioned above, the latest available data show that there are now approximately 328,500 people in federal prison. ⅛ pra note 2.

. My colleagues who I join in writing about Mr. McCarthan's case have adopted the term “saving clause” as opposed to the term this Court has always used: “savings clause.” See, e.g., Mackey v. Warden, FCC Coleman-Medium, 739 F.3d 657, 661 (11th Cir. 2014) (“[The] exception to § 2255(e)'s bar on a § 2241 petition is commonly referred to as the 'savings clause.’"); Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, 1279 (11th Cir. 2014) (Pryor, William, J., concurring) (“That exception — the 'savings clause'— recognizes that a motion to vacate a sentence may sometimes be inappropriate, that is, 'inadequate or ineffective,' so in that circumstance Congress allows a federal prisoner to 'test the legality of his detention’ in the traditional action against his custodian.”); Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1262 (11th Cir. 2013) ("[The] exception to § 2255(e)'s bar on a § 2241 petition is commonly referred to as the 'savings clause.’ ”); Gilbert v. United States, 640 F.3d 1293, 1305-06 (11th Cir. 2011) (en banc) ("The [] exception to the § 2255(e) bar on § 2241 petitions, commonly referred to as the 'savings clause,’ is the focus of our issue[.]”).
While I recognize that the Supreme Court used the term “saving clause” in Bourne-diene, courts still use both "saving” and "savings” in this context. I will continue as we have, not because of any value judgment about the Majority’s new term, but because I have grown accustomed to the old.

. In Bryant, this Court created a five-part test a prisoner must pass before he is allowed to access the savings clause to make a claim, like the one Mr. McCarthan makes here: that one of his previous convictions was wrongly characterized as a "violent felony” under § 924(e) causing him to receive a sentence of at least 15 years under § 924(e) rather than a sentence of no more than 10 years under § 924(a). This five-part test is found nowhere in the words of the statute. It was this five-part Bryant test that required the panel to deny relief to Mr. McCarthan.
The first step of the Bryant test is the “squarely foreclosed” requirement. See Bryant, 738 F.3d at 1274 (“[The petitioner] must establish that ... throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit’s binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a).”). The second step of the Bryant test further enforces the “squarely foreclosed” requirement. See id. (“[The petitioner] must establish that ... subsequent to his first § 2255 proceeding, [a] Supreme Court[] decision ..., as extended by this Court to [his] distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed [his] § 924(e) claim.”). ,

. Mr. Williams’s quest for relief on this issue continues. Since the Supreme Court gave retroactive relief to some inmates serving sentences improperly enhanced under ACCA, this Court granted Mr. Williams permission to file a second or successive petition on July 1, 2016.

. Every circuit to have considered the issue — except for the Tenth Circuit and now this Circuit — has concluded that, at the least, the savings clause allows a prisoner to challenge his detention when a retroactive statutory-interpretation decision from the Supreme Court shows that the prisoner was convicted for conduct that the law does not in fact make criminal. See Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008); Poindexter v. Nash, 333 F.3d 372, 378 (2d Cir. 2003); In re Dorsainvil, 119 F.3d 245, 251-52 (3d Cir. 1997); In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000); Reyes-Requena v. United States, 243 F.3d 893, 903-04 (5th Cir. 2001); Wooten v. Cauley, 677 F.3d 303, 307-08 (6th Cir. 2012); Brown v. Caraway, 719 F.3d 583, 586-87 (7th Cir. 2013); Marrero v. Ives, 682 F.3d 1190, 1192, 1194-95 (9th Cir. 2012); In re Smith, 285 F.3d 6, 8 (D.C. Cir. 2002).